William J. SWATEK, Plaintiff-Appellant,

v.

COUNTY OF DANE and Richard Raemisch, Sheriff, Defendants-Respondents-Petitioners,

COUNTY OF JUNEAU, Orlando Bellini, Sheriff and City of Elroy, Defendants-Respondents,

Steven L. OWEN, William F. McCreedy, Lynn Almquist, Monona Grove Clinic, S.C., Wisconsin Municipal Mutual Insurance Company, Defendants,

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION, Defendant-Respondent,

SCOTTSDALE INSURANCE COMPANY, Defendant.

Supreme Court

*No. 92–1902. Oral argument January 10, 1995.—Decided April 24, 1995.*

(Also reported in 531 N.W.2d 45.)

For the defendants-respondents-petitioners there were briefs by *John M. Moore, David J. Pliner* and *Bell, Metzner, Gierhart & Moore, S.C.,* Madison and oral argument by *John M. Moore.*

For the plaintiff-appellant there was a brief and oral argument by *Jeffrey D. Knickmeier,* Stoughton.

Amicus curiae brief was filed by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

WILCOX, J. This is a review of an unpublished decision of the court of appeals. The court of appeals reversed a circuit court ruling wherein Juneau County Circuit Court Judge Wallace A. Brady dismissed William J. Swatek's state-law negligence claim against Dane County and its sheriff, Richard Raemisch (Petitioners). On review, we consider the following issues:

1. What was the legislature's intent in enacting sec. 302.38(1), Stats.?

2. Did the court of appeals err in reversing the trial court's finding that the undisputed facts estab-

lished as a matter of law that Petitioners discharged their duties under sec. 302.38(1), STATS.?[1]

We conclude that the unambiguous language of sec. 302.38(1) mandates that although prisoners must be provided appropriate medical care or treatment when necessary, sheriffs or other jail keepers have discretion as to how to provide that care or treatment. We further conclude that the circuit court was correct in its determination that the undisputed facts established as a matter of law that Petitioners had discharged their duties pursuant to sec. 302.38(1); therefore, we reverse the court of appeals.

On December 10, 1990, Swatek appeared for a hearing before Dane County Circuit Court Judge Moria Krueger in connection with a prior felony conviction. When Swatek arrived for his court appearance he informed his attorney, Jeffrey Knickmeier, that he was experiencing pain in his right side. Knickmeier advised Judge Krueger of Swatek's complaint and she asked

---

[1] Petitioners also ask this court to consider whether "the court of appeals erred when it raised and developed its own legal arguments and theories, none of which were raised or argued by the parties, to support Swatek's position." In his dissent at the court of appeals level, Judge Charles P. Dykman chastised the court for addressing and developing issues not specifically raised by the parties. We agree with Judge Dykman that "[t]here are real problems with addressing unmade claims and developing the arguments for one side to a dispute." *Swatek v. County of Dane,* No. 92–1902, Unpublished slip op. at 2 of dissent (March 17, 1994). While the court of appeals had no duty to consider any issues other than those presented to it, nonetheless, the court had "discretion to do so." *Waushara County v. Graf,* 166 Wis. 2d 442, 453, 480 N.W.2d 16, 20 (1992), *cert. denied,* 113 S. Ct. 269 (1992).

Swatek if he would like to postpone the hearing to a later date. Swatek stated that he would prefer to just "get it over with." Consequently, the hearing proceeded as scheduled.

As Swatek and Knickmeier left Judge Krueger's courtroom, two Dane County Sheriff's Department deputies approached Swatek and informed him that he was being placed under arrest based on an outstanding warrant from the Elroy Police Department. Knickmeier protested that Swatek was suffering from an apparent attack of appendicitis and that they were on their way to the hospital for treatment. The deputies took Swatek into custody and escorted him to the booking area of the Dane County Jail. Once at the booking area, one of the arresting deputies informed the booking officer that Swatek was complaining of an apparent attack of appendicitis. After Swatek was booked into the Dane County Jail, the booking officer then contacted William McCreedy, the nurse on duty at the jail. Swatek was held in the jail bullpen until McCreedy arrived some ten minutes later.

McCreedy is an employee of the Monona Grove Clinic, S.C. Dane County and the Clinic had previously entered into an agreement whereby the Clinic was to provide physician, nursing, pharmacy, x-ray, and laboratory services for the Dane County Jail. The policy of the Dane County Sheriff's Department is to contact the Clinic personnel on duty in the jail whenever Sheriff's Department personnel "feel that an inmate is in need of emergency medical care."

Swatek was conveyed to an examining room where he was examined by McCreedy. McCreedy palpated Swatek's abdomen and raised his leg in an effort to determine whether Swatek was in any pain in the area of the appendix. McCreedy asked Swatek to tell him if

there was any pain during the examination. The record reveals conflicting testimony as to whether Swatek made any comments during the examination.[2] In any event, McCreedy stated to the deputy on duty that he believed Swatek could remain in custody without any medical attention because "he's got 24 hours." Consequently, Swatek was placed in a cell while awaiting his transport to Juneau County for resolution of the outstanding warrant from Elroy. During his time in the cell, Swatek did not request any medical attention, nor did he make any complaints about his condition.

Swatek was transported from the Dane County Jail to the Juneau County Jail by City of Elroy police officers at approximately 5:45 p.m., slightly less than two hours after he was arrested. Swatek was booked

---

[2] In his deposition, Swatek first indicated that "[e]ach time [Nurse McCreedy] began to push I'd say that's hurting." Shortly thereafter, however, the following exchange took place between Petitioners' counsel and Swatek:

Q And you didn't tell the nurse I feel so bad I have to go to the hospital, did you?

A No.

Q You didn't ask the nurse if you could see a doctor, did you?

A No.

Q You didn't say anything to the nurse other than that your side hurt?

A Yeah. I didn't even say that.

Q You didn't say a word to him?

A No.

It is important to recognize that this apparent "conflict" in testimony is not at all of concern for our subsequent summary judgment analysis as it relates to the issue of Nurse McCreedy's alleged negligence which is not germane to this case. The testimony simply is furnished in an attempt to provide the complete factual background.

into the Juneau County Jail at approximately 7:25 p.m. He was released at around noon on the following day. Approximately seven hours later that day, Swatek sought medical care for his abdominal pain. Swatek was diagnosed as having an attack of appendicitis and his appendix was surgically removed.

On August 30, 1991, Swatek filed suit against Dane County and its sheriff—Richard Raemisch, Juneau County and its sheriff—Orlando Bellini, and the City of Elroy.[3] Swatek asserted a number of claims as to why these defendants were negligent in the handling of the situation. He also alleged that the defendants had violated his civil rights. The defendants filed summary judgment motions requesting that the claims be dismissed. The circuit court, Judge Brady presiding, granted summary judgment in favor of the defendants in a written decision dated April 29, 1992. The circuit court concluded "the facts establish that the defendants discharged their duties pursuant to Section 302.38, WIS. STATS., [and therefore] the plaintiff's negligence claims should be dismissed." The circuit court also concluded that Dane County, Juneau County, and the City of Elroy were entitled to immunity under sec. 893.80(4), STATS. Finally, the circuit court concluded that summary judgment in favor of the defendants was appropriate on the issue of Swatek's civil rights claim.

Swatek sought review in the court of appeals. The court of appeals affirmed the dismissal of Swatek's civil rights claims and the dismissal of Swatek's negligence

---

[3] On February 28, 1992, Swatek amended his complaint to include allegations of injury against various members of the Monona Grove Clinic as well as against several insurance companies. The actions of these parties, however, are not at issue in the present case and we pass no judgment as to those matters.

claims against all the defendants except Petitioners.[4] As to Petitioners, the court of appeals concluded that the circuit court had erred regarding the duty owed under sec. 302.38(1), STATS. The court also concluded that Petitioners could be held vicariously liable for Nurse McCreedy's alleged negligent examination and diagnosis of Swatek.[5] Finally, the court reversed the circuit court's holding that the undisputed facts showed Petitioners had, as a matter of law, provided appropriate care and treatment to Swatek. The court based its decision on Swatek's allegations that he was suffering from "evident" symptoms of appendicitis which jail personnel ignored. Petitioners subsequently filed a petition for review in this court, which was granted May 11, 1994.

---

[4] Swatek did not seek review of the court of appeals' decision affirming the judgment in favor of Juneau County, Sheriff Orlando Bellini, and the City of Elroy dismissing his claims against those defendants. Further, Swatek did not seek review on the civil rights claims against Dane County and Sheriff Raemisch. Consequently, we do not consider any of the issues surrounding those claims.

[5] The court of appeals, however, could not reach a majority on the reasoning as to why Petitioners could be held vicariously liable for Nurse McCreedy's alleged negligence. Judge Robert D. Sundby found that a master-servant relationship existed between Petitioners and McCreedy, thereby making Petitioners liable under a theory of *respondeat superior. Swatek,* Unpublished slip op. at 12 n.3. Judge Paul C. Gartzke found that Monona Grove Clinic and its nurse were independent contractors under the contract with the Dane County Sheriff's Department, but that Petitioners were nevertheless liable for McCreedy's negligence because Petitioners' duty was nondelegable, based on RESTATEMENT (SECOND) OF AGENCY sec. 214 (1957). *Id.* at 2 of concurrence.

Swatek's state-law claims against Petitioners are based on negligence. In order to prove negligence, Swatek must first prove that Petitioners owed him a duty. *Shicker v. Leick,* 40 Wis. 2d 295, 299, 162 N.W.2d 66, 69 (1968). Petitioners concede that they owed Swatek a duty pursuant to sec. 302.38(1), STATS. The dispute is over the extent of that duty. Consequently, our first task in this case is to examine Petitioners' obligations as prescribed by sec. 302.38(1). This task requires that we interpret the statute. The interpretation and application of a statute to a given set of facts are questions of law that this court reviews *de novo. Braatz v. LIRC,* 174 Wis. 2d 286, 293, 496 N.W.2d 597, 600 (1993); *State ex rel. Town of Delavan v. Circuit Court for Walworth County,* 167 Wis. 2d 719, 723, 482 N.W.2d 899, 900–01 (1992).

This court recently set out the statutory interpretation process:

> The aim of all statutory interpretation is to discern the intent of the legislature. In ascertaining a statute's meaning, our first inquiry is to the plain language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning.

*Doe v. American Nat. Red Cross,* 176 Wis. 2d 610, 616, 500 N.W.2d 264, 266 (1993) (citations omitted); *see also Redevelopment Authority of the City of Green Bay v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240, 243 (1984) (primary objective in the interpretation of a statute is to ascertain and give effect to the intent of the legislature). Further, "[a]ll words and phrases shall

57

be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." *See* sec. 990.01(1), STATS. Only when the statutory language is found to be ambiguous does this court need to examine the scope, history, context, subject matter, and object of the statute in discerning the intent of the legislature. *Cynthia E. v. La Crosse County Human Serv. Dept.,* 172 Wis. 2d 218, 225, 493 N.W.2d 56, 59 (1992). Finally, when construing a statute, we must interpret it in such a way as to avoid absurd or unreasonable results. *Ann M.M. v. Rob S.,* 176 Wis. 2d 673, 679, 500 N.W.2d 649, 652 (1993).

Section 302.38(1), STATS., provides:

> If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol the sheriff or other keeper of the jail shall provide appropriate care or treatment and may transfer the prisoner to a hospital or to an approved treatment facility under s. 51.45(2)(b) and (c), making provision for the security of the prisoner.

We conclude that the plain language of sec. 302.38(1), clearly and unambiguously sets forth the intent of the legislature. The first part of sec. 302.38(1) requires that all sheriffs[6] provide prisoners in their custody with "appropriate care or treatment." The legislature made the requirement mandatory by utilizing the words "shall provide." The general rule is that the word "shall" is presumed to be mandatory when it appears in a statute. *Wagner v. State Medical Examining Bd.,* 181

---

[6] In our reference to "sheriff" in this case, it is our intention to include the sec. 302.38(1), STATS., phrase concerning "other keeper of the jail."

Wis. 2d 633, 643, 511 N.W.2d 874, 879 (1994); *C.A.K. v. State,* 154 Wis. 2d 612, 621–22, 453 N.W.2d 897, 901 (1990). There is no indication in this case that this portion of the statute is meant to be read in any manner other than mandatory. Thus, the first part of sec. 302.38(1) mandates that sheriffs provide the appropriate medical care or treatment needed by those incarcerated within the jails of the state.

The second part of sec. 302.38(1), STATS., makes alternative provisions for obtaining the appropriate care or treatment. The statute explains that the prisoner in need of medical care "may" be transferred to a hospital or an approved treatment facility. "May" is defined in the dictionary as, *inter alia,* "having permission to" and "having liberty to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (1986). Thus, the use of the word "may" implies a discretionary element. *See, e.g., Miller v. Smith,* 100 Wis. 2d 609, 616, 302 N.W.2d 468, 471 (1981) (discussing "may" as generally being a discretionary term). Further, "[w]hen the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow v. Milwaukee County Civil Serv. Comm'n,* 82 Wis. 2d 565, 571, 263 N.W.2d 214, 217 (1978). Working from this basic tenet, the legislature here recognized that although prisoners "shall" be provided with appropriate medical care, sheriffs have the discretion or "liberty" as to how to provide that care.

By reading sec. 302.38(1), STATS., in such a manner, we consider and give effect to each word of the statute. *State v. Martin,* 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991). Further, this is both a logical

and reasonable interpretation of the statute. There is no dispute that medical needs among the thousands of Wisconsin inmates will vary by circumstance. There must, however, be some discretion as to how best to handle these needs. As Judge Dykman stated in *La Crosse Hosp. v. La Crosse,* 133 Wis. 2d 335, 340, 395 N.W.2d 612, 614 (Ct. App. 1986) (Dykman, J., dissenting): "It would make little sense to require the sheriff [pursuant to now sec. 302.38(1), STATS.] to transfer a prisoner to a hospital to obtain aspirin for a headache." On the contrary, what makes sense under sec. 302.38(1) is that the sheriff has discretion in deciding how best to attend to the needs of those inmates within their custody. This discretion may be exercised in a variety of ways, but is, of course, subject to review by the courts of this state, and the welfare of the inmates may not be disregarded.

The next issue we address is whether the undisputed facts establish as a matter of law that Petitioners properly discharged (did not breach) their discretionary duties under sec. 302.38(1), STATS., i.e., provided "appropriate" care or treatment.[7] The trial court answered this question in the affirmative and granted the summary judgment motion of Petitioners. The court of appeals reversed.

---

[7] It is important to recognize that this issue is not synonymous with the issue of Nurse McCreedy's negligence. Resolution of whether Petitioners fulfilled their statutory duties in this case can only be resolved by looking to the specific statutory language of sec. 302.38(1), STATS. Resolution of whether Nurse McCreedy was negligent, on the other hand, would involve an analysis utilizing the regular negligence standard, i.e., *ordinary care under the circumstances.*

Resolution of this issue necessarily requires that we first consider what the legislature meant by "appropriate" care or treatment. The legislature left the word "appropriate" undefined. "In the absence of a statutory definition, all words are construed according to common and approved usage." *State v. Gilbert,* 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 514 (1983). The common and approved usage of a word may be established by resort to dictionary definitions. *Id.* at 378, 340 N.W.2d at 515. In his dissent, Judge Dykman quoted WEBSTER'S NEW COLLEGIATE DICTIONARY, 56 (1977), which defines "appropriate" as "especially suitable or compatible: fitting." A similar definition is found in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 106 (1986): "specially suitable," "fit," and "proper." Thus, the inquiry under sec. 302.38(1), STATS., can be phrased as whether it was especially suitable, fitting or proper, under the undisputed facts of this case, for Petitioners to have Swatek examined in the Dane County Jail by a medical professional from the Monona Grove Clinic, and to subsequently rely on that professional's opinion that Swatek did not need further medical care and could safely remain in custody.

When reviewing a grant of summary judgment, we apply the standards set forth in sec. 802.08, STATS., just as the trial court applies those standards. *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). Under sec. 802.08, summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our

first step in the summary judgment methodology is to discern whether the pleadings set forth a claim for relief as well as a material issue of fact. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980). If the pleadings meet this initial test, our inquiry shifts to the moving party's affidavits or other proof to determine whether a *prima facie* case for summary judgment has been presented. *Id.* at 338, 294 N.W.2d at 476–77. If the moving party has made a *prima facie* case for summary judgment, we then examine the affidavits and other proof of the opposing party to discern whether there "exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." *Id.* at 338, 294 N.W.2d at 477.

In the present case, the pleadings of Swatek set forth a claim for relief as well as material issues of fact. Swatek alleged in his complaint and his amended complaint that Petitioners violated sec. 302.38(1), STATS. He also alleged a variety of facts indicating the reasons why Petitioners had violated sec. 302.38(1). Therefore, Swatek has overcome the first hurdle in the summary judgment analysis.

Our analysis now shifts to Petitioners' affidavits and other proof to determine whether they have established a *prima facie* case for summary judgment. Petitioners filed several affidavits in support of their motion for summary judgment. An affidavit by Sheriff Raemisch made several relevant assertions. First, all jail policy for the Dane County Jail is established by the sheriff. Second, the policy decision has been made to contract with the Monona Grove Clinic for the health care needs of the inmates at the Dane County Jail. Third, the Monona Grove Clinic employees are not employees of Dane County or the Dane County Sher-

iff's Department. Attached to the affidavit is a copy of both the Dane County Jail Sheriff's Department Security and Services Manual and the contract between Dane County and Monona Grove Clinic for the provision of the inmate medical services.

In section 608.6 of the "Medical and Health Care" portion of the Security and Services Manual, the sheriff has set forth a policy for emergency medical care: "In order to ensure that the lives and health of inmates are safeguarded and to provide adequate health care to inmates, emergency medical services will be provided to inmates on a 24 hour a day basis. Inmates requiring medical care will, if necessary, be conveyed to a hospital emergency room for such care." The specific procedures under this section note that any member of the jail staff may make the determination that a potential medical emergency situation exists. If a member of the jail staff believes an emergency medical situation exists, he or she "must immediately call the nurse or physician" on duty who will then evaluate the situation. If the nurse or physician believes that conveyance to a medical facility is necessary then the conveyance will be made.

The contract between Dane County and the Monona Grove Clinic sets out the rights and obligations of the parties. The contract provides:

> At all times during the term of this agreement, PROVIDER [Monona Grove Clinic] agrees to indemnify, save harmless and defend the COUNTY, its boards, commissions, agencies, officers, employees and representatives against any and all liability, loss, damages, costs or expenses, whether personal injury or property damage, which the COUNTY, its officers, employees, agencies, boards, commissions and representatives may sustain,

incur or be required to pay by reason of the PRO-VIDER furnishing the services or goods required under this agreement.

Further, the contract states that Monona Grove Clinic "agrees to provide twenty-four hour, seven days per week, physician on-call service." The contract also explains that Monona Grove Clinic will staff adequate nursing services so as to provide for "first aid or emergency care as needed." In sum, the contract provides that Monona Grove Clinic will service all of the on-premises medical and health care needs of the Dane County Jail and its inmates.[8]

With their summary judgment motion, Petitioners also filed portions of Swatek's deposition. In his deposition, Swatek admitted that immediately following his being booked into the Dane County Jail, a sheriff's deputy summoned the nurse on call from the Monona Grove Clinic to examine Swatek. The nurse performed a brief examination and explained to the deputy sheriff that there was no need for concern. Swatek was placed in the bullpen for a short waiting period and then he was placed in a jail cell. Swatek admitted that at no time during his entire stay at the Dane County Jail did he complain to the deputies about pain, the need for medication, or the need to go to the hospital. Finally, Swatek stated that he was not "treated badly" by any of the Dane County Jail personnel.

We conclude that the affidavits and other proof submitted by Petitioners establish a *prima facie* case

[8] The contract also sets forth that: "PROVIDER agrees to secure at PROVIDER's own expense all personnel necessary to carry out PROVIDER's obligations under this agreement. Such personnel shall neither be deemed to be employees of the COUNTY nor have any direct contractual relationship with the COUNTY."

for summary judgment on the issue of whether Petitioners properly discharged their duties pursuant to sec. 302.38(1), STATS. The submitted information is sufficient to place the burden on Swatek to come up with proof that there remain material issues of fact requiring resolution at trial. Thus, we must next consider Swatek's response to Petitioners summary judgment motion.

Swatek filed an affidavit asserting that "I did not at any time refuse medical attention or withdraw any of the demands made by my attorney and myself that I be taken to a hospital. My symptoms and pain were always obvious to anyone, including an untrained person, and I was in great fear for my life at all times." Swatek also stated that he believed further demands or requests made to the jail personnel would have only provoked those individuals and that there would have been retribution for his protestations. Finally, Swatek asserted that "[i]t was apparent that the demands of myself and my Attorney were being ignored and laughed at" and that "I should allow my Attorney to handle the matter."

Our review of the evidence submitted at the summary judgment motion leads us to conclude, as did the circuit court, that no material issues are in dispute and that Petitioners are entitled to a judgment as a matter of law. The facts indicate that Petitioners recognized the potential problem of Swatek's appendicitis and promptly instituted procedures to handle the matter. Those procedures are carefully delineated in the "Medical and Health Care" portion of the Dane County Jail Sheriff's Department Security and Services Manual. The procedures require that a nurse be contacted to evaluate and examine an inmate requiring medical

65

attention. There is no dispute that Petitioners summoned Nurse McCreedy to examine Swatek shortly after he had made complaints about the possibility of appendicitis. Nurse McCreedy was an employee of the Monona Grove Clinic which had previously contracted to provide medical services to the inmates of Dane County Jail. As noted above, sec. 302.38(1), STATS., gives sheriffs discretion as to how to fulfill the mandate of providing appropriate care and treatment to the inmates in their custody. The contract was specific and clearly provided that for consideration paid, Monona Grove Clinic was to handle the primary needs of the inmates in the Dane County Jail.

In sum, we conclude that the Petitioners' guidelines as to how to handle inmates in a position such as Swatek's are sound. Further, Petitioners followed these guidelines and provided appropriate care and treatment as required by sec. 302.38(1), STATS. Therefore, the circuit court's summary judgment ruling against Swatek was correct and the court of appeals' decision must be reversed.

*By the Court.*—The decision of the court of appeals is reversed.