MERITER HOSPITAL, INC., Plaintiff-Appellant-Cross-Respondent,†

v.

DANE COUNTY, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 02–2837. Submitted on briefs August 13, 2003.— Decided November 26, 2003.*

2003 WI App 248

(Also reported in 673 N.W.2d 328.)

† Petition to review granted 3-23-04.

658

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *John Walsh* and *Guy DuBeau* of *Axley Brynelson, LLP*, Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Kristi A. Gullen*, assistant corporation counsel, of *Dane County Corporation Counsel*, Madison.

A nonparty brief was filed by *Timothy J. Yanacheck* and *John M. Moore* of *Bell, Gierhart & Moore S.C.*, Madison, for the Badger State Sheriff's Association.

A nonparty brief was filed by *John J. Prentice* and *Andrew T. Phillips* of *Prentice & Phillips LLP*, Milwaukee, for the Wisconsin Counties Association.

A nonparty brief was filed by *Laura J. Leitch* of *Wisconsin Hospital Association, Inc.*, Madison, for Wisconsin Hospital Association, Inc.

Before Deininger, P.J., Dykman and Nettesheim, JJ.

¶ 1. DYKMAN, J. Both Meriter Hospital, Inc. (Meriter) and Dane County appeal from a judgment against Dane County awarding Meriter $8,623.07.[1] Meriter contends that WIS. STAT. § 302.38 (2001–2001)[2] requires Dane County to pay the medical bills Michael Gibson incurred at Meriter because Gibson was a prisoner when admitted and was "otherwise detained" throughout his hospitalization. We conclude Gibson was held under state criminal laws only for the first three days of his stay at Meriter and affirm.

¶ 2. Dane County cross-appeals and claims the trial court erred by using the Diagnostic Related Group (DRG) rate for compensation rather than the discharge rate. We conclude that the Department of Health and Family Services (DHFS) requires Dane County to pay Meriter according to the DRG method. We affirm.

## FACTS

¶ 3. The parties do not dispute the material facts. The Dane County Sheriff's Department brought inmate Michael Gibson to Meriter when he became very ill. Within three days, the sheriff informed the prosecutor that Gibson had been hospitalized. The State moved to dismiss the charges against Gibson and the trial court granted the motion. The Department of Probation and Parole also cancelled an order to detain Gibson. Thereafter, a deputy no longer needed to guard Gibson at Meriter. The Department of Corrections issued an Apprehension Request, stating that Meriter was to contact

---

[1] We note that Badger State Sheriff's Association, Wisconsin Counties Association, and Wisconsin Hospital Association, Inc., filed amicus curiae briefs in this case.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

the sheriff or Gibson's probation agent prior to releasing Gibson from the hospital. When the time came, however, the sheriff did not detain Gibson. Gibson's treatment at Meriter lasted thirty-four days. His medical bills amounted to $187,569.37, which he is unable to pay.

¶ 4. Both parties agree that WIS. STAT. § 302.38[3] controls this appeal, that Gibson was an indigent prisoner when admitted, and that Meriter may recoup from Dane County some of the costs of Gibson's medical care.

## DISCUSSION

### *Criminal Status of Gibson*

■■

¶ 5. Meriter's issue on appeal is whether WIS. STAT. § 302.38 requires Dane County to pay for the costs Gibson incurred after the trial court dismissed the charges against him. Application of a statute to undisputed facts constitutes a conclusion of law. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d

---

[3] WISCONSIN STAT. § 302.38 reads in pertinent part:

**Medical Care of Prisoners.** (1) If a prisoner needs medical or hospital care . . . [the] superintendent or other keeper of the jail or house of correction shall provide appropriate care or treatment and may transfer the prisoner to a hospital . . . making provision for the security of prisoner . . . .

(2) The prisoner is liable for the costs of medical and hospital care outside the jail or house of correction. If the prisoner is unable to pay the costs, the county shall pay the costs in the case of persons held under the state criminal laws or for contempt of court . . . .

(3) The maximum amount that a governmental unit may pay for the costs of medical or hospital care under this section is limited for that care to the amount payable by medical assistance under subch. IV of ch. 49 . . . ."

63 (1981). We review matters of law without deference to the trial court. *First Nat'l Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

■

¶ 6. Meriter contends that Wis. Stat. § 302.38 does not sever Dane County's liability when the court dismissed charges against Gibson. Meriter makes two arguments. First, it claims that § 302.38 determines Dane County's liability when Meriter admits the patient for care. Therefore, irrespective of any future events, Dane County is liable for Gibson's expenses incurred throughout the thirty-four days he was hospitalized. Meriter relies upon the eligibility procedures used for medical assistance to support this position. Although indigent prisoners do not qualify for medical assistance, Meriter contends that this framework is the most useful analogy for establishing eligibility. Under that system, the hospital determines a patient's eligibility at admittance.

■■

¶ 7. Wisconsin Stat. § 302.38(2) requires the county to "pay the costs in the case of persons held under the state criminal laws or for contempt of court . . . ." We conclude that this statute is not ambiguous. Thus, we do not need to refer to the medical assistance framework as Meriter suggests. We apply the ordinary and plain meaning of unambiguous statutory language. *State v. Peterson,* 2001 WI App 220, ¶ 13, 247 Wis. 2d 871, 634 N.W.2d 893. The circumstances altering Gibson's criminal status do not render the statute ambiguous. *Compare State v. McKee,* 2002 WI App 148, ¶¶ 9–10, 256 Wis. 2d 547, 648 N.W.2d 34, *review denied,* 2002 WI 121, 257 Wis. 2d 118, 653 N.W.2d 890 (Wis. Sept. 26, 2002). Section 302.38 does not fix admittance as the time when we determine the county's liability for

indigent prisoners. We will not confine the eligibility determination to that time.

¶ 8. We conclude that a patient must either be held under the state criminal laws or for contempt of court" while receiving treatment in order for the county to be liable for medical costs. If a patient already admitted to the hospital becomes "held under the state criminal laws or for contempt of court," then the county will be liable for medical costs if that person is indigent. In Gibson's case, the reverse occurred. He lost his status as a person "held under the state criminal laws." WIS. STAT. § 302.38. We conclude Dane County was no longer liable for medical costs incurred after the trial court dismissed charges against Gibson.

¶ 9. Alternatively, Meriter argues Gibson did not lose his criminal status after the court dismissed his charges because an Apprehension Request "otherwise detained" him according to WIS. STAT. § 301.01(2).[4] This request required the hospital to notify the sheriff prior to releasing Gibson. Meriter also asserts that Gibson was also constructively detained because he was in a coma, making it impossible for him to leave the hospital. Additionally, Meriter notes that Gibson's attorney continued to negotiate concerning his case because he was unaware that the court dismissed the charges.

¶ 10. The pertinent inquiry is whether Gibson was "held under state criminal laws." WIS. STAT. § 302.38. We recently decided that a person did not have

[4] WISCONSIN STAT. § 301.01(2) reads in pertinent part: " 'Prisoner' means any person who is either arrested, incarcerated, imprisoned or otherwise detained in excess of 12 hours by any law enforcement agency of this state . . . ."

criminal status while hospitalized once a trial court stays confinement. *State v. Edwards*, 2003 WI App 221, 267 Wis. 2d 491, 671 N.W.2d 371. We reached that determination in *State v. Edwards*, which addressed jail credits for hospitalized offenders. An offender subject to an escape charge for leaving the hospital was in "custody" pursuant to WIS. STAT. § 946.42(1). *Id.*, ¶ 21. We did not consider the fact that the jail administrator instructed the hospital to notify him when it was time for the hospital to release the offender probative of criminal status. *Id.*, ¶ 5. Similarly, Gibson was not in custody after the trial court dismissed the charges against him. The State could not have charged him with escape if he had left the hospital. *See* § 946.42. Section 302.38(2) does not allow us to substitute an Apprehension Request for criminal charges.

¶ 11. Finally, Meriter proffers several miscellaneous arguments about why Dane County's liability stems beyond Gibson's first three days in the hospital. It argues that Dane County could not have satisfied its statutory obligation to provide Gibson "appropriate" care if Gibson had been released after three days because he was gravely ill. WIS. STAT. § 302.38(1). Meriter also argues that the sheriff exercised his discretion by bringing Gibson to the hospital and that Dane County now cannot shirk from the ramifications of that decision. Moreover, the sheriff instigated Gibson's release by informing the prosecutor that Gibson required medical treatment at Meriter. It argues that concerns about expensive medical treatment motivated the sheriff to suggest Gibson's release, violating the sheriff's duty to secure prisoners. It also argues that the sheriff has no legal authority to seek the release of prisoners.

¶ 12. We decline to consider these peripheral is-
sues. Whether Dane County could have fulfilled its
statutory obligation to provide care to Gibson in three
days is irrelevant because those are not the facts of this
appeal. WISCONSIN STAT. § 302.38 does not consider the
State's or the sheriff's motives; we will not presume as
much when applying this unambiguous statute. Dane
County is liable only for the first three days of Gibson's
medical treatment.

### Prorating the DRG Value

██ ██

¶ 13. Meriter argues that WIS. STAT. § 302.38 does
not require it to prorate the DRG value over the
number of days the patient stays in the hospital. It
explains that the DRG classification system "lump[s]
various patients into categories based on their diagnosis
determined by the nature of the treatment they re-
quired." It maintains that the DRG value considers the
"entire scope of the treatment provided." In other
words, this aggregate cost assessment is indivisible by
the number of days a patient stays in the hospital.
While Meriter's argument may have merit in the con-
text of medical assistance claims, § 302.38(2) limits
reimbursement for medical care to indigent prisoners.
An indigent prisoner may lose his or her criminal
status. At that point, the county's liability ends. We
conclude that § 302.38 does not hold the county liable
for the entire DRG value. To hold otherwise would
render the limit on liability meaningless; the county
would be liable for the "entire scope of treatment
provided" regardless of criminal status. Meriter has
argued that the trial court should not have prorated the
DRG value. It has not argued that the trial court
incorrectly prorated the DRG value.

### *Discharge Rate v. DRG Method*

■

¶ 14. Dane County cross-appeals the trial court's order granting partial summary judgment to Meriter on the DRG rate issue. We review orders granting summary judgment de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

■

¶ 15. Dane County claims the trial court erred by calculating Meriter's fee according to the DRG method. It asserts that the *in pari materia* doctrine requires us to read WIS. STAT. § 302.38,[5] which governs indigent prisoners, with WIS. STAT. § 49.02(5)(bm),[6] which governs relief block grants. Both statutes direct the agencies to pay according to the medical assistance rate determined by DHFS. Dane County claims that DHFS has set the medical assistance rate for relief block grants at the discharge rate. It argues that an absurd result will occur if we read § 302.38 to require different county agencies to pay different fees to Meriter for the same services to indigent clients. Therefore, it urges us to apply the discharge rate to indigent prisoners as well. It also asserts that the attorney general supported its position by characterizing § 49.02 and § 302.38 as "similar species," such that one department could process

---

[5] Pertinent portions of WIS. STAT. § 302.38 cited supra, footnote 2.

[6] WISCONSIN STAT. § 49.02(5)(bm) provides in pertinent part: "A relief agency shall limit its liability for health care services funded by a relief block grant to the amount payable by medical assistance under subch. IV for care for which a medical assistance rate exists."

forms and negotiate costs for both the jail and general relief agencies. *See* OAG 249, 255 (1988).

■

¶ 16. Meriter replies that there is no basis to read Wis. Stat. § 302.38(3) in conjunction with Wis. Stat. § 49.02(5)(bm). We agree. The *in para materia* doctrine applies when statutes relate to the same subject matter or have a common purpose. *Perra v. Menomonee Mut. Ins. Co.*, 2000 WI App 215, ¶ 9, 239 Wis. 2d 26, 619 N.W.2d 123. These two statutes provide medical care for different groups of indigent people: non-prisoners and prisoners. The difference between these groups is considerable. We cannot presume that each statute's policy concerns are sufficiently similar to merit the *in para materia* doctrine. Although the attorney general characterized the agencies as similar, that opinion does not bind us and does not address the issue of this cross-appeal.

¶ 17. The record contains DHFS guidelines directing Meriter to use DRG methodology and a letter from DHFS to Dane County that reads in pertinent part: "Medicaid actually pays hospitals on a Diagnosis Related Group (DRG) basis . . . ."[7] DHFS requires Meriter to use the DRG rate for medical assistance claims. Wisconsin Stat. § 302.38(3) limits the county's liability "to the amount payable by medical assistance under subch. IV of ch. 49 . . . ." Thus, the statute directs the

---

[7] Wisconsin Admin. Code § HFS 101.03(94m) provides: " 'Medicaid purchase plan' means the medical assistance program allowed under 42 USC 1396a(a)(10)(A)(ii) and s. 49.472, Stats." Wisconsin Stat. § 49.472 governs medical assistance purchase plans in Wisconsin. Therefore, Medicaid encompasses the medical assistance programs in Wisconsin.

county to pay according to the rate DHFS has set for medical assistance, which is the DRG rate.

¶ 18. Dane County contends that requiring it to pay the full DRG amount renders the term "maximum" meaningless. It argues that WIS. STAT. § 302.38(3) does not prohibit Dane County from paying less than the maximum medical assistance amount; it only prohibits paying more. Meriter asserts that this interpretation of "maximum" would render § 302.38(2) meaningless because Dane County could comply with § 302.38(3) by paying one dollar. Such a payment would not exceed the maximum permitted, but would violate the mandate that "the county shall pay the costs . . . ." provided in § 308.38(2). We agree. The legislature has not granted the county discretion to pay any amount less than the maximum amount for medical assistance. Section 302.38(2) would be eviscerated by such discretion because the county would preserve its resources by paying as little as possible.

¶ 19. Dane County also claims that the usual practice between the parties was for it to pay Meriter the discharge rate and that Meriter is trying now to select the method most advantageous to it, absent any statutory to do so. We consider this argument unpersuasive. Pursuant to WIS. STAT. § 49.45(3)(e)1, DHFS determined that Meriter must calculate its fee according to the DRG method. The decision equally binds Meriter and Dane County. Neither party has statutory authority to regulate the payment system for Medicaid. The usual practice between the parties is immaterial.

¶ 20. Finally, Dane County asserts that the trial court should have granted it summary judgment because Meriter did not disprove its evidence that the State's fiscal agent advised it to pay Meriter the discharge rate. But the fiscal agent does not have statutory authority to administer WIS. STAT. § 302.38; DHFS bears that responsibility. Dane County also argues that no reasonable inferences exist to support granting Meriter partial summary judgment. It claims the evidence Meriter submitted to prove that DHFS required it to use the DRG rate for medical assistance was irrelevant. We disagree. The evidence Meriter submitted showing that it applied the DRG rate to medical assistance was probative of the county's liability for "the amount payable by medical assistance under subch. IV of ch. 49." We affirm.

*By the Court.*—Judgment affirmed.