MERITER HOSPITAL, INC., Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

DANE COUNTY, Defendant-Respondent-Cross-Appellant.

Supreme Court

*No. 02–2837. Oral argument September 22, 2004.—Decided December 7, 2004.*

2004 WI 145

(Also reported in 689 N.W.2d 627.)

1

For the plaintiff-appellant-cross-respondent-petitioner there were briefs by *John Walsh, Guy DuBeau* and

*Axley Brynelson, LLP,* Madison, and oral argument by *Guy DuBeau.*

For the defendant-respondent-cross-appellant there was a brief and oral argument by *Kristi A. Gullen,* assistant corporation counsel.

An amicus curiae brief was filed by *Laura J. Leitch,* Madison, on behalf of Wisconsin Hospital Association, Inc.

An amicus curiae brief was filed by *Andrew T. Phillips, Evan N. Claditis* and *Prentice & Phillips LLP,* Milwaukee, on behalf of Wisconsin Counties Association.

¶ 1. N. PATRICK CROOKS, J. The petitioner, Meriter Hospital (Meriter), seeks review of a published decision of the court of appeals, *Meriter Hospital, Inc. v. Dane County,* 2003 WI App 248, 268 Wis. 2d 658, 673 N.W.2d 328, affirming the circuit court of Dane County, Judge Gerald C. Nichol presiding. The issues we address are, first, whether Wis. Stat. § 302.38[1] (2001–02) requires the respondent, Dane County, to pay all of the medical and hospital bills incurred on behalf of an indigent prisoner, Michael Gibson (Gibson), who was a prisoner in the Dane County jail upon admittance to the hospital, but had the criminal charges pending against him dismissed on the third day of his extended hospitalization, after his parole hold had also been lifted. Second, we determine whether the Dane County Sheriff complied with his statutory obligations under Wis. Stat. §§ 59.27(1) and 302.38(1).

¶ 2. We conclude that the plain reading of Wis. Stat. § 302.38[2] does not require Dane County (County) to pay for all of the medical and hospital bills of Gibson,

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Wisconsin Stat. § 302.38 provides, in relevant part:

4

an indigent prisoner, once the parole hold had been cancelled and the circuit court had granted the motion of the State of Wisconsin (State) to dismiss the pending charges against him. Gibson lost his prisoner status and was no longer "held" under the criminal laws of Wisconsin, when the circuit court dismissed the charges. We also conclude that Gibson's status did not change when the Department of Corrections issued an apprehension request for him. This request to bring Gibson into custody only had the effect of making him a "potential prisoner," and did not render him "held under the state criminal laws or for contempt of court," as set forth in § 302.38(2). In so holding, we decline to expand the County's liability under § 302.38(1) and require it to pay for all of Gibson's care.

¶ 3. Finally, we conclude that the Dane County Sheriff[3] met his statutory obligations in dealing with Gibson. The sheriff kept the prisoner secure, pursuant

Medical care of prisoners. (1) If a prisoner needs medical or hospital care . . . [the] superintendent or other keeper of the jail or house of correction shall provide appropriate care or treatment and may transfer the prisoner to a hospital . . . making provision for the security of the prisoner. . . .

(2) The prisoner is liable for the costs of medical and hospital care outside of the jail or house of correction. If the prisoner is unable to pay the costs, the county shall pay the costs in the case of persons held under the state criminal laws or for contempt of court . . . .

(3) The maximum amount that a governmental unit may pay for the costs of medical or hospital care under this section is limited for that care to the amount payable by medical assistance under subch. IV of ch. 49. . . .

[3] All references to "sheriff" herein include the sheriff, all deputies, and other personnel that are under the control of the Dane County Sheriff. The sheriff at the time these matters occurred was Gary H. Hamblin.

5

to Wis. Stat. § 59.27(1), while Gibson was "held under the state criminal laws." Additionally, we hold that the sheriff met the "appropriate care" standard under Wis. Stat. § 302.38(1). Thus, we affirm the court of appeals.

I

¶ 4. The relevant facts of this case are not in dispute. Michael Gibson, an indigent inmate at the Dane County jail, became gravely ill on December 16, 1998, and was transported by the sheriff to Meriter Hospital. Meriter's staff treated Gibson for a bacterial infection and septic shock, leading to multi-organ dysfunction failure. The parties agree that he likely would have died within 24 hours had he not received proper medical attention, and that all treatment rendered was necessary.

¶ 5. Gibson was treated at Meriter for 34 days. Because he was in custody for a parole violation and as a result of pending criminal charges, it was necessary that a deputy provide security outside of Gibson's hospital room 24 hours per day.[4] The total cost for Gibson's care and treatment at Meriter, not including the overtime pay for the security provided, amounted to $187,569.37.

¶ 6. During the first three days of Gibson's hospitalization, the sheriff informed the Dane County prosecutor and Gibson's parole officer that Gibson had been hospitalized. On December 17, 1998, the Wisconsin

---

[4] Under Wis. Stat. § 302.38(1), the sheriff is required to make "provision for the security of the prisoner." In this case, it was argued that the sheriff could not reduce the level of staffing within the jail to provide guard coverage, so that many of the deputies were forced to work overtime, in order to provide security while Gibson was hospitalized.

6

Division of Community Corrections issued a cancellation of the order to detain Gibson. The State then moved to dismiss the charges against Gibson on December 18, 1998. The Deputy District Attorney, Judy Schwaemle, indicated in her motion that the decision to drop the charges was based on Gibson's grave illness, and that it was no longer in the public interest to maintain the prosecution against him on charges of resisting or obstructing an officer. The circuit court, Judge Patrick J. Fiedler presiding, granted the motion and dismissed Gibson's pending criminal charges and ordered his release from custody.

¶ 7. On December 17, 1998, the Department of Corrections issued an apprehension request that, among other things, directed Meriter to contact either the Dane County Sheriff or a probation agent, so that Gibson could be returned to custody after his release from the hospital. On January 14, Meriter contacted the sheriff to inform him of Gibson's proposed release date, pursuant to the apprehension request. When Gibson finally left the hospital on January 18, 1999, the sheriff did not act on the apprehension request and take him into custody, until several weeks after his release from Meriter.[5]

¶ 8. With respect to the correct payment methodology, both parties agree that Wis. Stat. § 302.38 controls this review, that Gibson was an indigent prisoner when he was admitted to the hospital, and that Meriter may recoup from Dane County at least some of the costs

---

[5] On February 8, 1999, the police were called to Gibson's home for a noise complaint. There was no ticket issued or charges filed, but because of his outstanding apprehension request in the system, the police took Gibson to the Dane County jail. While at the jail, Gibson's apprehension request was cancelled, and he was released.

of Gibson's hospital care. The total hospital bill for Gibson's 34–day stay amounted to $187,569.37. In response to this bill, Dane County paid Meriter $4,463.26, based on the discharge rate established by the State's fiscal agent for the medical assistance program. This amount was for the three days of Gibson's treatment during which the County conceded that he was formally "held." By contrast, Meriter claims that under the terms of § 302.38(3), it is owed the amount payable for the entirety of Gibson's stay under the Medical Assistance provisions of Wis. Stat. ch. 49, subch. IV.

¶ 9. Meriter bases its reimbursement expectations on a calculation method known as the Diagnostic Related Group (DRG) rate, determined by the Wisconsin Department of Health and Family Services. Under this methodology, providers are paid a set fee based on the diagnosis of the individual patient. That set fee can be increased when actual costs exceed a certain threshold. As noted, the actual costs for Gibson's treatment were $187,569.37, which brings this matter past the applicable threshold. Based on the DRG amount, before allowing the increase caused by exceeding the threshold, the payments due for Gibson's treatment would be $74,847.92.

¶ 10. Meriter filed a complaint against the County to compel increased compensation for Gibson's bill for his treatment. Both sides filed motions for summary judgment. The circuit court granted partial summary judgment to Meriter on the issue of payment methodology, ruling that Meriter was entitled to receive payment at the DRG rate under Wis. Stat. ch. 49, subch. IV. The rest of Meriter's motion for summary judgment was denied. A trial was held on April 18, 2002, and the circuit court ruled that "the County [was] liable to Meriter for Gibson's hospital costs only up to the time

8

the pending charges were dismissed and the parole hold dropped." The court also held that the apprehension request did not alter Gibson's status. The circuit court determined that Gibson would be "held" for only the purposes of Wis. Stat. § 302.38 if the sheriff took him into custody.

¶ 11. The Court of Appeals, District IV, in an opinion by Judge Charles P. Dykman, affirmed, holding that the County was not liable for Gibson's treatment costs which were incurred after the parole hold was dropped and the charges against him were dismissed, since he was no longer "held" under Wis. Stat. § 302.38. The court also determined that Gibson was not "otherwise detained" under Wis. Stat. § 301.01, and that an apprehension request did not affect his status once the charges pending against him were dropped. Finally, the court of appeals decided that the County must pay Meriter according to the DRG rate, rather than the discharge rate, but prorated that amount to include only the three days in which Gibson received care. The County appealed the DRG payment issue, but we denied review. Accordingly, we decline to address it further.

II

¶ 12. We first address whether Wis. Stat. § 302.38 requires the County to pay for the medical and hospital bills of an indigent prisoner, if he or she is no longer "held under the state criminal laws." Wis. Stat. § 302.38(2). The interpretation of a statute presents a question of law, which we review de novo. *State v. Williams,* 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). Although we consider this question independent of the decisions of the circuit court and the court of appeals,

we nevertheless benefit from their analyses. *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

¶ 13. When interpreting a statute, the primary objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Knowing this, the court's analysis should begin with the plain language of the statutory text. *Id.,* ¶ 45. If the language of the statute is clear on its face, the court should apply the statute using the common and generally accepted meanings of the terms. *Fox v. Catholic Knights Ins. Soc.,* 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 665 N.W.2d 181. With an unambiguous statute, the court need not consult extrinsic sources of interpretation. *Kalal,* 271 Wis. 2d 633, ¶ 46; *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 7, 260 Wis. 2d 633, 660 N.W.2d 656.

¶ 14. Meriter asserts that the court of appeals incorrectly interpreted Wis. Stat. § 302.38(2). It states that the phrase in the statute, "held under the state criminal laws," is ambiguous, and could be reasonably interpreted to freeze the County's obligation to pay for a prisoner upon his admittance to the hospital. In support, Meriter argues that § 302.38(2) "does nothing to identify temporal limitations, i.e., when it is that the prisoner must be 'held;' the subsection only identifies who must pay." Meriter also contends that the court of appeals misinterpreted the legislature's use of the word "held." It argues that "held" was inserted by the legislature in the past tense, because the legislature intended that there be a contemporaneous holding of a prisoner as a prerequisite for liability, but that once established, liability continues even if the status changes.

10

¶ 15. We agree with the court of appeals and conclude that Wis. Stat. § 302.38 is unambiguous. We interpret the plain meaning of the statute's language, and conclude that Gibson was "held under the state criminal laws," as set forth in § 302.38(2), for only the first three days he was at Meriter. The statute places payment obligations on the County for only the periods of time during which an indigent prisoner has criminal charges pending against him or her or is held for contempt of court. We conclude that the legislature inserted the word "held" to modify the class of prisoners for whom the County is liable for medical and hospital bills. Dane County has argued that "held" is both the past tense and past participle of "hold," and that a participle, in its most common use, acts as an adjective. Consistent with that approach, the correct grammatical interpretation of this statute, therefore, would be that the legislature used the term "held" to describe those persons who are indigent prisoners. Applying that grammatical methodology here, we conclude that § 302.38(2) requires a contemporaneous holding of the prisoner, in order to hold the County liable for the medical and hospital costs incurred. A change of status has a direct bearing on whether such liability continues.

¶ 16. We also decline to accept Meriter's argument that we should, in effect, expand the interpretation of "held" to include an apprehension request. Meriter argues that Gibson did not lose his prisoner status under Wis. Stat. § 302.38, after his charges were dismissed and the parole hold dropped, because he was still a prisoner, pursuant to Wis. Stat. § 301.01(2).[6] It

---

[6] Wisconsin Stat. § 301.01(2) provides, in part: " 'Prisoner' means any person who is either arrested, incarcerated, impris-

claims that the issuance of the apprehension request "otherwise detained" Gibson in the hospital, because the sheriff was supposed to take him into custody upon his release from Meriter. We agree with the court of appeals that Gibson lost his status as a prisoner when the circuit court dismissed the pending criminal charges, after the parole hold was cancelled.

¶ 17. An apprehension request is not the same as a detention of Gibson by the sheriff. This request, at best, made Gibson a "potential prisoner," dependent on whether the sheriff acted on the request. In this case, the sheriff did not bring Gibson back into custody. The hospital had contacted the sheriff with information concerning Gibson's expected release in accord with the apprehension request, but the sheriff did not apprehend him upon his release from Meriter.

██

¶ 18. When interpreting Wis. Stat. § 301.01, we cannot expand the scope of the statute, as requested by Meriter, simply because it includes the phrase "otherwise detained." "[W]here a general term . . . is preceded or followed by a series of specific terms, the general term is viewed as being limited to items of the same type or nature as those specifically enumerated." *State v. Campbell,* 102 Wis. 2d 243, 246, 306 N.W.2d 272 (Ct. App. 1981) (citations omitted). In § 301.01, the term prisoner is defined as a person who is either "arrested, incarcerated, imprisoned or otherwise detained . . . ." Therefore, the correct interpretation of that statute involves limiting the phrase "otherwise detained" so as to coincide with the preceding terms: arrested, incar-

oned or otherwise detained in excess of 12 hours by any law enforcement agency of this state . . . ."

cerated, and imprisoned. A pending apprehension request, by itself, does not result in a person being "held."

¶ 19. This interpretation is consistent with the holding in *State v. Edwards,* 2003 WI App 221, 267 Wis. 2d 491, 671 N.W.2d 371. In that case, Edwards made repeated trips to the hospital, while serving a jail sentence. He filed a motion seeking confinement credit for the time he was receiving care, because his sentence was stayed during the periods of hospitalization. He argued that he was "in custody" during his hospital stints and, as a result, should be allowed credit. The court of appeals held that while in the hospital, Edwards was not a prisoner for the purposes of Wis. Stat. § 302.38(1). *Id.*

¶ 20. The court of appeals correctly relied on *Edwards* and Wisconsin's escape statute, Wis. Stat. § 946.42(1)(a), to support its conclusion that Gibson was no longer "held" under the criminal laws of Wisconsin. The escape statute establishes that a probationer is still a prisoner if he or she is "in actual custody or is subject to a confinement order under s. 973.09(4)." Wis. Stat. § 946.42(1)(a). The court in *Edwards* held that because the circuit court stayed his sentence, his confinement order did not apply during his time in the hospital. Therefore, Edwards was not in custody, and could not have been charged with escape, had he attempted to leave the hospital. *Edwards,* 267 Wis. 2d 491, ¶ 21. Similarly, in this case, the court of appeals stated: "Gibson was not in custody after the trial court dismissed the charges against him. The State could not have charged him with escape if he had left the hospital." *Meriter Hosp.,* 268 Wis. 2d 658, ¶ 10. We agree that because the apprehension request did not result in Gibson being in custody, and thus "held," the County

was not liable for his medical and hospital bills from Meriter beyond his third day of care.

## III

¶ 21. We next address whether the sheriff breached any duties in his handling of Gibson's medical treatment.[7] Meriter presents two arguments. First, it asserts that the sheriff violated his statutory responsibility under Wis. Stat. § 59.27(1),[8] by seeking the release of a prisoner for medical reasons. Second, Meriter argues that the sheriff did not provide Gibson with "appropriate care" under Wis. Stat. § 302.38(1), because it sidestepped the statute's corresponding obligation to pay for that care.

¶ 22. We first consider whether the sheriff avoided his statutory obligation under Wis. Stat. § 59.27(1). Meriter contends that, as a result of this statute, the sheriff has a duty to keep prisoners in jail and no statutory authority to seek actively the release of a prisoner entrusted to him.

¶ 23. We are not persuaded by Meriter's arguments concerning Wis. Stat. § 59.27(1). Meriter presents nothing that suggests the sheriff failed in his duty

---

[7] The court of appeals declined to evaluate and analyze these arguments. It concluded that "Wisconsin Stat. § 302.38 does not consider the State's or the sheriff's motives; we will not presume as much when applying this unambiguous statute." *Meriter Hosp. v. Dane County,* 2003 WI App 248, ¶ 12, 268 Wis. 2d 658, 673 N.W.2d 328.

[8] Wisconsin Stat. § 59.27(1) provides, in relevant part:

"The sheriff of a county shall do all of the following:

(1) Take the charge and custody of the jail maintained by the county and the persons in the jail, and keep the persons in the jail personally or by a deputy or jailer."

to secure Gibson. The fact that the sheriff no longer guarded Gibson after the parole hold was cancelled and the charges against him were dismissed, and then failed to take him into custody after he was released from the hospital, is not sufficient to establish a violation of § 59.27(1). Even if we assume that Meriter is correct in arguing that it was the sheriff that requested that the charges against Gibson be dismissed, we have found no statutory mandate that forbids the sheriff from seeking to have charges against a prisoner dropped.[9] Accordingly, we hold that the sheriff did not violate his duty to secure prisoners in accord with § 59.27(1).

¶ 24. We next address whether the sheriff met his obligations to provide "appropriate care" under Wis. Stat. § 302.38(1). Meriter contends that the requisite care was not provided to Gibson, because the County did not pay for all of the care that was deemed "appropriate." It argues that subsections (1) and (2) should be read in pari materia, because any care provided under subsection (1) creates an obligation to pay for that care under subsection (2).[10]

---

[9] Meriter was in no position to argue that the State erroneously exercised its discretion in moving to dismiss the criminal charges pending against Gibson, nor that the circuit judge did so by granting the motion.

[10] We note that after the parole hold was lifted and the charges pending against Gibson were dismissed by the circuit court, that those charges were not refiled. It is also important to note, again, that upon Gibson's discharge from Meriter, the sheriff did not act on the apprehension request and take Gibson into custody until several weeks later. Had the sheriff acted on the apprehension request immediately after Gibson's discharge from Meriter, and had the dismissed charges been refiled, certainly Meriter's position would be much stronger.

¶ 25. According to Wis. Stat. § 302.38(1), all sheriffs in Wisconsin are required to provide prisoners in their custody with "appropriate care or treatment." We previously determined in *Swateck v. County of Dane,* 192 Wis. 2d 47, 58, 531 N.W.2d 45 (1995), that the sheriff could meet his or her burden for "appropriate care" if his or her actions were "especially suitable, fitting or proper. . . . " *Id.* at 61. We held that the legislature made this requirement mandatory on sheriffs by inserting the words "shall provide" into the statute. We also concluded that the use of the word "may" in the latter part of § 302.38(1) implied discretion. "[T]he legislature here recognized that although prisoners 'shall' be provided with appropriate medical care, sheriffs have the discretion or 'liberty' as to how to provide that care." *Id.* at 59.

¶ 26. The sheriff properly used his discretion in accord with Wis. Stat. § 302.38(1), in transferring Gibson to Meriter Hospital. All agree that Gibson likely would have died if he were not taken to the hospital. The question that we consider, then, is whether the sheriff's actions can be deemed appropriate, even though the County refuses to pay for all of the care that the hospital appropriately administered. Meriter argues that when the sheriff provides care by transferring an indigent prisoner to a hospital, the sheriff is taking the position that the transfer to the hospital satisfies his or her statutory obligation to provide "appropriate care." Meriter argues that because the sheriff would have had to pay for the costs of providing care to the prisoner in jail, he assumes responsibility for the costs of providing the "appropriate care" at the hospital.

¶ 27. We decline to adopt Meriter's interpretation of Wis. Stat. § 302.38(1). The statute, on its face, limits the financial responsibility of the County, by requiring

it to pay for medical care only when a certain class of prisoners cannot pay— those persons "held under the state criminal laws or for contempt of court." Wis. Stat. § 302.38(2). The legislature also limited the County's costs by its reference to the medical assistance rates contained in Wis. Stat. subch. IV of ch. 49.

¶ 28. The clear statutory language limiting the County's financial liability does not allow us to accept Meriter's interpretation of Wis. Stat. § 302.38(1). By asking the court to expand the County's liability and require it to pay for essentially all of the care that results from treating an indigent prisoner, even after that person is no longer being "held," Meriter's expanded reading of the statute could lead to absurd results. If, for example, an indigent prisoner broke his leg while in a jail or house of correction, the sheriff or other custodian would provide "appropriate care" by transferring the prisoner to a hospital. If that prisoner is later released from custody, but continues necessary treatment for his broken leg, the county or other municipality involved would continue to be liable, if Meriter's argument were to be accepted. Any such indigent person arguably might be able to rely on the county or other municipality involved to pay for a lifetime of medical bills involving the broken leg even after release from custody. Such an interpretation would have far reaching ramifications, and would clearly exceed an appropriate interpretation of the statute.

¶ 29. Meriter's arguments are less than persuasive on an equitable basis in light of the fact that it did not seek any alternative remedies, in order to be compensated more fully for Gibson's bills. In Gibson's Progress Notes while at Meriter, dated January 14 and 15, 1998, it is clear that the hospital had notice that the

17

County planned to pay for only the first three days of Gibson's care. The note from January 14 stated:

> Patient and Family Services phone call to Sargeant (sic) Vander Molen @ Dane County Jail. He reports patient is NOT a hold for Jail. Pt was released from custody on 12–18–98. Spoke w/ Rene Bain, Financial Coordinator, who reports Co. Jail is NOT paying for pt's Hospital stay as of 12–18–98. Pt has no health insurance, is self-pay. Will talk to pt regarding Interim Assistance through the county.

Meriter was aware of at least some of the funding options available to pay for a greater portion of the treatment provided to Gibson. It could have attempted to gather the necessary information and resources to ensure that Gibson would qualify for whatever assistance was available to him. At the very least, Meriter could have taken some responsibility itself to check out other sources of payment, rather than sending the County a bill for Gibson's entire 34–day hospitalization.

IV

¶ 30. Meriter next argues that we should incorporate medical assistance law into our interpretation of Wis. Stat. § 302.38. According to § 302.38(3), "[t]he maximum amount that a governmental unit may pay for the costs of medical care or hospital care under this section is limited for that care to the amount payable by medical assistance under subch. IV of ch. 49. . . . " Meriter asserts that by means of this language, the legislature intended that municipalities, including counties, must pay the health care providers for indigent prisoner care the same amount that those health care providers would have received for treating medical assistance patients.

18

¶ 31. In response to Meriter's argument, the County argues that reference to ch. 49 in the statute appears to serve merely as an upper limit for the County's financial responsibility. We are satisfied that if the legislature had intended that the amount counties pay for indigent prisoners be equal with what the health care provider receives under medical assistance laws, it could have clearly said so in the statute, and it did not do so. We have already held that Wis. Stat. § 302.38 is unambiguous, and we conclude that there is no language in the statute requiring that regulations from the medical assistance program be applied in the manner Meriter desires.

¶ 32. Relying on a medical assistance law approach, Meriter also contends the County should be liable for all of the days Gibson was hospitalized, because liability under medical assistance attaches on a person's arrival at the hospital, and is not contingent upon any future events. Such an argument ignores the plain meaning of the statute, and again attempts to read into the reference to ch. 49 much more than is appropriate.

## V

¶ 33. Finally, we address Meriter's policy argument that if we affirm the court of appeals, we will open the floodgates to prisoner dumping by county jails across the state.

¶ 34. We note, again, that the process of dismissing criminal charges does not lie with the sheriff. In this case, while the sheriff may have brought to the district attorney's attention the fact that Gibson was seriously ill and hospitalized in intensive care, the decision to move to dismiss the pending criminal charges was not

made by the sheriff or the County, but by the district attorney. It was the circuit court that granted that motion.

¶ 35. If the result in this case seems harsh, redress should come from the legislature, not from this court. "If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the legislature, not the courts." *La Crosse Hosp. v. La Crosse,* 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986) (citations omitted).

## VI

¶ 36. In sum, we conclude that Dane County is not liable to Meriter for Gibson's medical and hospital bills for the period after his parole hold had been cancelled and the criminal charges against him had been dismissed. We apply the plain meaning of Wis. Stat. § 302.38(2), and determine that Gibson was not "held under the state's criminal laws or for contempt of court" beyond the third day of his hospital stay at Meriter. We also conclude that Gibson's status did not change when the Department of Corrections issued an apprehension request for him.

¶ 37. Additionally, we hold that the sheriff met all requisite statutory obligations. Gibson was provided with security pursuant to Wis. Stat. § 59.27 while he was considered a prisoner, and was provided with "appropriate care" when he was transferred from the jail to the hospital, as required under Wis. Stat. § 302.38(1). The County does not have an obligation to pay for all of the care that was provided to Gibson.

*By the Court.*—The decision of the court of appeals is affirmed.