George WHEELER and Shirley Wheeler, Plaintiffs-Respondents,

v.

GENERAL TIRE & RUBBER COMPANY, a foreign corporation, and Liberty Mutual Insurance Company, a foreign corporation, Defendants-Co-Appellants,

UNITED STATES FIRE INSURANCE COMPANY, Defendant,

KENSEY-HAYES COMPANY, a foreign corporation, Defendant-Appellant.

Court of Appeals

*No. 86–0353. Submitted on briefs October 20, 1987.—Decided December 30, 1987.*

(Also reported in 419 N.W.2d 331.)

For the defendant-appellant the cause was submitted on the briefs of *Andrew O. Riteris* and *James E. Bauman,* and *Michael, Best & Friedrich,* of Milwaukee.

For the defendants-co-appellants the cause was submitted on the briefs of *J. Ric Gass* and *Kasdorf, Lewis & Swietlik, S.C.,* of Milwaukee.

For the respondents the cause was submitted on the brief of *Eric J. Van Vugt* and *Michael J. Collard,* and *Minahan & Peterson, S.C.,* of Milwaukee.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. General Tire and Rubber Company, Liberty Mutual Insurance Company, and Kelsey-Hayes Company appeal from a judgment for personal injuries to George Wheeler in 1979 when a tire he was mounting on a rim exploded. A procedural issue exists: whether the death of George Wheeler during his appeal was suggested on the record within the meaning of sec. 803.10(1)(a), Stats., and his claim must be dismissed because a motion to substitute his personal representative was not timely made. We conclude that his death was not suggested on the record and his claim need not be dismissed. The substantive issues are the sufficiency of evidence to support the apportionment of zero percent causal negligence to Wheeler, to support the apportionment of forty percent causal negligence to General Tire, and to support the punitive damages award; whether the trial court properly allowed the pleadings to be amended to add a punitive damages claim against Kelsey-Hayes; and whether the court should have evaluated the sufficiency of the evidence as to punitive damages before submitting the case to the jury. Finding no error we affirm.

On November 23, 1979 George was injured at his place of employment. The tire explosion was probably[1]

---

[1]Wheeler could not recall what he had been doing immediately before the accident, and there were no eye-witnesses. A sixteen

caused when he inflated a sixteen inch General Tire tire he had mounted on a sixteen and one-half inch Kelsey-Hayes rim. When a sixteen inch tire is mounted on a sixteen and one-half inch rim and is inflated, the bead on the tire will not seat properly and the tire may explode.

George and his wife, Shirley, commenced this action against appellants, alleging strict liability and negligence claims. Their theory was that before the tire and rim were manufactured in 1977, General Tire and Kelsey-Hayes knew of the danger associated with mismatching a tire and rim but failed to include warnings on their products. The complaint sought punitive damages only from General Tire. The trial court permitted plaintiffs to amend their complaint at trial to claim punitive damages against Kelsey-Hayes.

The jury found both General Tire and Kelsey-Hayes liable under strict liability and negligence theories, and attributed forty percent of the cause of George's injuries to General Tire, forty percent to Kelsey-Hayes and zero percent to George.[2] It awarded $500,000 compensatory damages to George and $160,000 compensatory damages to Shirley, and assessed $200,000 punitive damages against both General Tire and Kelsey-Hayes. The trial court awarded $22,868.76 in medical expenses.

1. *Death of George Wheeler Pending Appeal*

Counsel for George and Shirley Wheeler wrote to the court in December 1986 regarding difficulties in obtaining trial transcripts from the court reporter. In

---

and one-half inch Kelsey-Hayes rim and a sixteen inch General Tire tire were found on a fork lift in his work area immediately after the accident. No other tires or rims were in the area.

[2] It found Wheeler's employer twenty percent causally negligent.

the last paragraph of his letter, counsel stated that George Wheeler had died. A copy of the letter was mailed to opposing counsel. Because no motion was made to substitute the personal representative of the estate George Wheeler, we directed the parties to file memoranda on the effect, if any, of sec. 803.10(1), Stats., in light of sec. (rule) 809.84, Stats.

If a party dies during an appeal, we expect that this court and all parties will be advised. Death may moot the appeal. Appointment of a personal representative may avoid future problems regarding authority of counsel, settlement, costs, satisfactions and the like. The rules of appellate procedure in Ch. 809, Stats., do not, however, specify what is to be done if a party to an appeal dies pending appeal.

Because the appellate rules do not cover the matter, the rules of civil procedure govern unless the circumstances of the appeal or the context of the rule of civil procedure requires a different result. Sec. (Rule) 809.84, Stats. The rules of civil procedure have a provision regarding death while an action is pending in the trial court. Section 803.10(1)(a), Stats., provides:

[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in s. 801.14 and upon persons not parties in the manner provided in s. 801.11 for the service of a summons. Unless the motion for substitution is made not later than 90 days after the death is suggested on the record by service of a statement of the facts of the death as provided

> herein for the service of the motion, the action shall be dismissed as to the deceased party.

Since neither the circumstances of this appeal nor the context of the rule of civil procedure requires a different result, we conclude that sec. 803.10(1)(a) applies.

The question is whether counsel's reference in his letter to the death of George Wheeler is a suggestion of death on the record within the meaning of sec. 803.10(1)(a), Stats. Appellants contend that the letter is such a suggestion and because decedent's personal representative was not substituted for him within the 90-day period provided in sec. 803.10(1)(a), his claim must be dismissed. We conclude that this is not the case.

■

No reported decision has decided what is a suggestion of death on the record for purposes of sec. 803.10(1)(a), Stats. However, this rule of civil procedure adopted by our supreme court is almost identical to and is based on Rule 25(a)(1) of the Federal Rules of Civil Procedure. Judicial Council Committee's Note, 67 Wis. 2d 653 (1974). When a Wisconsin rule of civil procedure is based on a federal rule, the decisions of the federal courts may be persuasive. *Carlson Heating, Inc. v. Onchuck,* 104 Wis. 2d 175, 179 n. 2, 311 N.W.2d 673, 675–76 (Ct. App. 1981).

*Rende v. Kay,* 415 F.2d 983, 985 (D.C. Cir. 1969), notes that Rule 25(a)(1) establishes a time limit for a motion to substitute based on the time a suggestion of death is made on the record. A motion to substitute may be made by any party without awaiting the suggestion of death, but if a party desires to limit the time within which another may make the substitu-

tion, this may be accomplished by suggesting a death on the record. The delay in effecting a substitution may be avoided "either by filing a motion for substitution or by suggesting death on the record and thus triggering the 90-day period which begins with suggestion of death." *Id.*

Even if all parties know that a party has died, the 90-day limit in Rule 25(a)(1) is not triggered until service of the suggestion of death. *United States v. Miller Brothers Constr. Co.,* 505 F.2d 1031, 1034–35 (10th Cir. 1974), *Henkel v. Stratton,* 612 F. Supp. 190, 191 n. 1 (N.D. Ohio 1985). "[T]he time for filing a motion for substitution commences only after the death of the party is *formally* suggested on the record ... " *Blair v. Beech Aircraft Corp.,* 104 F.R.D 21, 22 (W.D.Pa. 1984), *aff'd,* 787 F.2d 580 (3d Cir. 1986) (emphasis added). The *Blair* court held that the mere filing of a pleading referring to a death was not a suggestion of death on the record.

We conclude that reference to the death of George Wheeler in a letter to the court of appeals was not a suggestion of death on the record within the meaning of sec. 803.10(1)(a), Stats. Accordingly, the letter did not trigger the 90-day period in which to file a motion for substitution. George Wheeler's claim need not be dismissed for failure to substitute the proposed representative of his estate. In view of our disposition of this issue and the fact that no motion to substitute has been filed, we need not order that Wheeler's personal representative be substituted.

## 2. *Apportionment of Negligence to George Wheeler*

Appellants contend that the evidence was insufficient to support the apportionment of zero percent negligence to George Wheeler. They base their contention on his knowing where to look for the size markings on the tire and rim, and his knowing that he should not mismatch a tire and rim, that he should not inflate a tire over forty psi to seat it on the rim, and that if the bead of the tire was not seated properly at twenty psi, he should deflate and remount the tire. They assert he needed no warning to tell him not to mismatch a tire and rim.

██ A jury's apportionment of negligence will be sustained

> if there is any credible evidence that supports the verdict, sufficient to remove the question from the realm of conjecture. To reverse, this court must conclude that there is such a complete failure of proof that the verdict must have been based on speculation. The reviewing court looks at the evidence in the light most favorable to sustain the verdict. Thus, when more than one inference may be drawn from the evidence presented at trial, this court is nevertheless bound to accept the inference drawn by the jury. (Citations omitted.)

*Gonzales v. City of Franklin,* 137 Wis. 2d 109, 134, 403 N.W.2d 747, 757 (1987). We search the record for credible evidence to sustain the verdict, not to sustain a verdict the jury could have reached but did not. *Id.* at 135, 403 N.W.2d at 758.[3]

---

[3]Rather than being "legal semantics" or a "time tested cliche," this is the standard of review enunciated by the Wisconsin Supreme Court, which we are required to apply.

George testified that on the day of his accident he did not know a half-inch size rim existed. He knew that a fifteen inch tire could not be mismatched with a sixteen inch rim or a fourteen inch tire with a fifteen inch rim. He did not believe there was any danger of mismatching the tires and rims he worked with.

Co-worker Steven Buss agreed. Buss testified that there was no danger of mismatching the tires and rims he and George worked with, since the tire would either fall off or could not be put on the rim at all. However, George Edwards testified that it is relatively easy to put a sixteen inch tire on a sixteen and one-half inch rim.

Buss suggested that the tire and rim George worked on may have been presented to him as a set, since he could not have gotten them any other place in the shop. George's co-workers would match the size of the tire they were changing to a new tire, rather than first read the size markings on the rims and match a new tire to a rim. The outside diameters of sixteen and sixteen and one-half inch rims are the same: seventeen and one-half inches. The different sizes are determined by the inside dimensions of the rim. One of George's co-workers testified that before the trial he did not know that a sixteen inch rim and a sixteen and one-half inch rim had a seventeen and one-half inch outside diameter but different inside diameters.

Given this state of the record, we must sustain the zero apportionment of negligence to George. The jury could reasonably conclude that a person who did not know half-inch rims existed, and who believed there was no danger of mismatching the tires and rims he normally worked with, was not negligent in mounting a sixteen inch tire on a sixteen and one-half inch rim,

especially if he was changing a wheel which came with such a tire mounted on such a rim.

Our conclusion is unaffected by appellants' argument that George knew that if the bead did not seat, the tire must be deflated and the mounting process started over. They claim he must have been negligent in failing to follow this procedure. We disagree. No evidence shows that George saw that the bead was not properly seated, or that the bead would always be improperly seated and visible. In fact, an expert witness testified that it is more likely that the side of the tire at which a worker would be looking would appear normal. Co-worker Josheff testified that the beads do not always "work out" evenly when a tire is properly mounted. He would not necessarily stop if the bead was not working its way out.

3. *Apportionment of Negligence to General Tire*

General Tire argues that no credible evidence supports apportionment of forty percent causal negligence to it, since the likelihood of this accident occurring was remote. In view of the nature of strict liability, evidence of other mismatch cases and the possible serious consequences of a mismatch, we reject the contention.

Strict liability arises when a defective condition makes a product unreasonably dangerous, and the product is sold without an adequate warning of danger. Strict liability has nothing to do with foreseeability and culpability. A duty to warn arises, however, if the seller has or should have knowledge of a dangerous use. Relevant considerations in a duty-to-warn case include the likelihood of an accident occurring and the seriousness of the consequences.

*Krueger v. Tappan Co.,* 104 Wis. 2d 199, 207 n. 3, 311 N.W.2d 219, 223 (Ct. App. 1981).

General Tire relies on studies reporting a "one in a million" likelihood of tire-rim accidents occurring between 1970–80. However, one study itself acknowledged that not enough data had been gathered. Further, there was no evidence that General Tire relied on these figures in deciding not to warn.

■

Evidence of past mismatch cases tends to show that the likelihood of a mismatch accident existed. Wendell Kegg testified that he had been involved as an expert witness for General Tire in seven or eight mismatch cases and that he thought the three or four other people doing the same type of work for General Tire had been involved in mismatch cases. The jury would have inferred that the likelihood of a mismatch accident was sufficient to establish that General Tire should have warned of the risk.

■

Even if the jury inferred that General Tire knew the probability of a mismatch accident was low, not only the likelihood of an accident but the seriousness of the consequences is a relevant consideration. *Krueger,* 104 Wis. 2d at 207 n. 3, 311 N.W.2d at 223. An expert testified that the cost of putting a warning sticker on the tires would have been very small. The jury could have found General Tire negligent for not providing a warning at a minimal cost for a possibly serious accident, even if the probability of an accident is low. *See Butler v. L. Sonneborn Sons, Inc.,* 296 F.2d 623, 626 (2d Cir. 1961) (if injury is likely to be serious, even slight foreseeability may warrant a finding that prudence requires the manufacturer to take the small additional burden to warn). *See also Davis v. Wyeth*

*Laboratories, Inc.,* 399 F.2d 121, 129–30 (9th Cir. 1968) (drug manufacturer has duty to warn of one case per million danger of contracting polio from polio vaccine, since "the risk qualitatively [e.g., of death or major disability] as well as quantitatively, on balance with the end sought to be achieved, is such as to call for a true choice judgment, medical or personal, ...").

General Tire and Kelsey-Hayes argue that minutes of Tire and Rim Association meetings indicating they knew of the mismatch problem in 1974 were improperly admitted as evidence. The admission of the minutes, if error, did not affect their substantial rights. They had reason to know of the problem and potential injuries by 1977. The tire and rim were manufactured in 1977. The accident occurred in 1979. General Tire admitted at trial that by 1975 it knew of the possibility of mismatching. By 1975, the Bennett Garfield Tire Guide[4] and Rubber Manufacturers Association "Care and Service of Radial Truck Tires" booklet[5] warned of the problem and the serious injury

---

[4]Only the 1977 Bennett Garfield Guide is in the record. It states at p. 86:

> While it is possible to pass a 16″ diameter tire over the lip or flame of a 16.5″ size diameter rim, it cannot be inflated enough to position itself against the rim flange. If an attempt is made to seat the tire bead by over-inflating, the tire bead will break with explosive force and could cause serious injury or death to the operator.

Wendell Kegg testified that warnings about the danger of mismatching were first published in the 1975 Bennett Garfield Tire guide.

[5]This booklet contains the following warning at p. 6:

> Always replace a tire on a vehicle with another tire of the same rim diameter. For example a 16″ tire goes with a 16″ rim. Never mount a 16″ size diameter tire on a 16.5″ rim.

which could result. Reversal is not required. Sec. 805.18(2), Stats.

General Tire next contends that the trial court erred in allowing evidence that in 1981 General Motors required warning stickers on Kelsey-Hayes' rims. It claims the evidence of General Motors' practice after George's 1979 accident was irrelevant, unnecessary for impeachment, inflammatory and lacked a foundation.

██ The trial court granted a motion *in limine* excluding evidence of the sticker "unless there is a changing condition which may make it applicable later." When respondents asked a witness about the stickers, General Tire's only comment was that the inquiry was entering "an area that you had ruled on early in the trial." The court replied, "It may be," and testimony then came in without further objection.[6] The parties apparently interpreted the court's statement as admitting the evidence. The court gave no reason for its discretionary decision. We must search the record for a reasonable basis for the decision. *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We will not find an abuse of discretion if a reasonable basis exists for the decision. *Id.* at 342, 340 N.W.2d at 501.

██ The court's ruling was not error under sec. 904.07, Stats., which prohibits evidence of subsequent remedi-

---

While it is possible to pass a 16″ diameter tire over the lip or flange of a 16.5″ size diameter rim, it cannot be inflated enough to position itself against the rim flange. If an attempt is made to seat the tire bead by overinflating, the tire bead will break with explosive force and could cause serious injury or death to the operator.

[6]Whether or not General Tire preserved its objection, we decide the issue on its merits.

al measures to prove negligence. We held in *Krueger* that evidence of post-accident warnings by a defendant manufacturer are inadmissible in a duty-to-warn case. However, relevant evidence of subsequent remedial measures by third persons is admissible. *D.L. v. Huebner*, 110 Wis. 2d 581, 617, 329 N.W.2d 890, 906–07 (1983).[7]

The trial court could have concluded that evidence regarding General Motors' practice was relevant. That General Motors required stickers on rims in 1981 and no mismatch accidents had since occurred tended to impeach the testimony of an expert witness that a written warning would not have prevented the accident. While specific evidence of causation between General Motors' use of stickers and the lack of accidents was not provided, the trial court could have reasonably left the causal connection to the jury. The court also could have concluded that the probative value of the evidence for impeachment purposes substantially outweighed the danger of unfair prejudice. Sec. 904.03, Stats. We conclude that the trial court did not abuse its discretion by admitting the warning sticker evidence.

4. *Punitive Damages Amendment.*

Kelsey-Hayes contends that the trial court erred in permitting the Wheelers to amend their complaint at the close of their case to include a punitive damages

---

[7]The justification for the distinction is that "[w]here the person taking the remedial measures is not a party to the litigation, he cannot be prejudiced by admission of the evidence, and the underlying policy considerations of encouraging people to take safety measures are not implicated." 10 Moore, Federal Practice, sec. 407.05 (2d ed. 1987).

claim. Kelsey-Hayes argues that it did not expressly or impliedly consent to try the unpleaded punitive damage issue. However, even absent consent, the trial court may permit an amendment in the interests of justice. *Zobel v. Fenendael,* 127 Wis. 2d 382, 390, 379 N.W.2d 887, 891–92 (Ct. App. 1985), *cert. denied,* 107 S. Ct. 47 (1986). An interest of justice determination is essentially a determination of prejudice. *Id.,* 379 N.W.2d at 892.

The trial court did not decide whether the amendment prejudiced Kelsey-Hayes. The existence of prejudice is a mixed question of law and fact. *Zobel,* 127 Wis. 2d at 391, 379 N.W.2d at 892. The court made no findings of historical facts. Kelsey-Hayes contends that had it known of the punitive damages claim, it could have called rebuttal witnesses who would have testified that Kelsey-Hayes did not know that personal injuries could result from mismatches until late 1976, and that it then immediately began attempting to prevent the possibility of injuries. Accepting as true Kelsey-Hayes' claim that it had additional evidence to present, we decide *de novo* whether prejudice exists. *Id.*

The Wheelers contend that Kelsey-Hayes was not prejudiced since the above evidence was also relevant to the negligence and strict liability claims. However, for whatever reason, Kelsey-Hayes chose not to offer this evidence. It was entitled to do so. Its ability to put in the evidence regarding the claims does not settle the prejudice issue if Kelsey-Hayes did not know of the punitive damages claim.

*State v. Peterson,* 104 Wis. 2d 616, 639, 312 N.W.2d 784, 795 (1981), held that, when a trial court *sua sponte* amends the pleadings at the close of the

evidence to conform to the proof under sec. 802.09(2), Stats., and where additional evidence still could be received, it must offer both sides an opportunity to submit additional evidence. It reached this holding despite the fact that the appellant had not told the trial court what additional evidence he might have submitted and had not requested a continuance. *Id.* at 636, 312 N.W.2d at 793–94. In *Zobel* we saw no reason not to apply *Peterson* where a party has moved to amend a complaint rather than where the court has done so *sua sponte.* 127 Wis. 2d at 390–91 n. 7, 379 N.W.2d at 892.

The trial court granted the motion to amend on August 20, 1985. According to the clerk's minutes, this occurred before the trial resumed that day. When the trial resumed, Kelsey-Hayes stated that it rested. It did not present additional evidence or request a continuance.

*Peterson* does not require that the trial court grant a continuance when one is not requested, only that it offer an opportunity to submit additional evidence. Kelsey-Hayes had that opportunity. It could have offered additional evidence after the court allowed the amendment. Rather than offer additional evidence, Kelsey-Hayes rested. Kelsey-Hayes' claim of prejudice in not being able to present additional evidence must be rejected in light of its failure either to use the opportunity to do so or to request a continuance.

5. *Sufficiency of Evidence to Support Punitive Damages Award.*

Both appellants contend that the evidence was insufficient to support the punitive damages award. "Punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the

defendant's conduct was willful or wanton, in a reckless disregard of rights or interests." *Brown v. Maxey,* 124 Wis. 2d 426, 433, 369 N.W.2d 677, 681 (1985). "An award of punitive damages will be upheld by this court if there is any evidence from which the jury could have reasonably concluded that the plaintiff met his burden of proving that the defendant's conduct was 'outrageous,'" *Id.*

Both appellants argue that the minutes of the Tire and Rim Association meetings cannot support the punitive damages award since they are inadmissible hearsay. The minutes, however, were only used to establish that appellants were aware of the mismatch problem by 1974. General Tire admitted it knew of the possibility of mismatching tires and rims by 1975. The 1975 Bennett Garfield Tire Guide and RMA "Care and Service of Radial Truck Tires" booklet contained warnings about the dangers of personal injury (including death) which could be caused by mounting sixteen inch tires on sixteen and one-half inch rims. The industry knew of the problem by 1975. The jury could have inferred that by 1977 appellants knew of the problem and the potential harm. Admission of the minutes, if error, was harmless. Sec. 805.18(2), Stats.

General Tire contends the evidence was insufficient to support punitive damages since the the likelihood of the accident occurring was too remote. Factors to consider in determining whether a manufacturer's conduct has been outrageous so as to justify punitive damages include "the existence and magnitude in the product of a danger to the public," "the manufacturer's awareness of ... the magnitude of the danger," and "the cost and feasibility of reducing the

danger to an acceptable level." *Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 228–29, 358 N.W.2d 816, 820 (Ct. App. 1984), citing Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich. L.Rev. 1258, 1369 (1976). Remoteness of an injury is not dispositive if the potential harm is severe and the cost and feasibility of reducing the probability of injury are low.

The record contains testimony that putting a side wall warning on the tires would have added a "very, very small cost." The cost to add such a warning to the rims would have been "insignificant." By 1975 the industry knew that a mismatch could cause serious injury or death, according to the Bennett Garfield and RMA guides. The jury could have concluded that appellants' conduct was outrageous even if the likelihood of injury was slight since the cost of avoiding the injury was insubstantial and the possible harm was serious. We conclude that the evidence was sufficient to support the punitive damages award.

6. *Evaluation of Punitive Damages by the Court*

Kelsey-Hayes contends that the trial court erred in failing to evaluate whether the evidence supported a punitive damage award until after the verdict was rendered. It claims that *Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 370 N.W.2d 815 (Ct. App. 1985), mandates an evaluation before the matter is submitted to the jury.

In *Maskrey,* the defendants moved to dismiss plaintiff's punitive damages claim at the close of their case for lack of evidence. We concluded that since there was no evidence of outrageous conduct, the trial court erred by taking the motion under advisement before submitting the claim to the jury and in denying

the motion to dismiss. *Id.* at 161–62, 370 N.W.2d at 823–24. *Maskrey* is distinguishable. This record contains evidence of outrageous conduct.

Kelsey-Hayes asserts that the trial court must evaluate the evidence before submitting a punitive damages issue to the jury, citing *Meshane v. Second Street Co.,* 197 Wis. 382, 386–87, 222 N.W. 320, 322 (1928). We agree, but Kelsey-Hayes has not shown how its substantial rights were affected by the trial court's failure to make that evaluation. We disregard errors not affecting the substantial rights of appellant. Sec. 805.18(2), Stats. Because the evidence supports the punitive damage award, we therefore disregard the trial court's failure to evaluate the evidence.[8]

*By the Court.*—Judgment affirmed.

---

[8]Kelsey-Hayes' initial brief contains no citations to the Northwestern Reporter, in violation of sec. (rule) 809.19(1)(e), Stats., and SCR 80.02. Respondents' and General Tire's briefs contain erroneous record citations, which have caused the court difficulty in referring to the record. Counsel are directed to check their case and record citations in the future.