John D. Hess, Joan M. Hess, Adrienne V. Hess, and Emily M. Hess, a minor, by William Smoler, her Guardian ad Litem, Plaintiffs-Respondents-Cross-Appellants†,

Wausau Insurance Companies, Subrogated-Plaintiff,

v.

Juan Fernandez III, M.D., Defendant-Appellant-Cross-Respondent,

Wisconsin Patients Compensation Fund, Defendant-Co-Appellant-Cross-Respondent.

Supreme Court

*No. 03–0327. Oral argument December 13, 2004.—Decided February 25, 2005.*

2005 WI 19

(Also reported in 692 N.W.2d 655.)

† Motion for reconsideration filed 3-9-2005.

286

For the defendant-appellant-cross-respondent there were briefs (in the court of appeals) by *Christopher R. Bandt* and *Nash, Spindler, Grimstad & McCracken,* Manitowoc, and oral argument by *Christopher R. Bandt.*

For the defendant-co-appellant-cross-respondent there were briefs by *Jon G. Furlow, Mary C. Turke* and *Michael Best & Friedrich, LLP,* Madison, and oral argument by *Jon G. Furlow.*

For the plaintiffs-respondents-cross-appellants there were briefs by *William Smoler* and *Smoler Law Office, LLC,* Monona, and oral argument by *William Smoler.*

¶ 1. N. PATRICK CROOKS, J. This case is before us on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2001–02).[1] Juan Fernandez, M.D. (Fernandez) and the Wisconsin Patients Compensation Fund (Fund) appeal[2] from an order of the Marathon County Circuit Court, Thomas S. Williams, Judge, which granted Joan, John, Adrienne, and Emily Hess's (Hess) post-verdict motion to amend the pleadings to allow an award of costs and reasonable actual attorney fees pursuant to Wis. Stat. § 51.61(7)(a). The

---

[1] Unless otherwise indicated all references to Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § (Rule) 809.61 states, in relevant part: "The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

[2] For the purposes of argument before this court, Fernandez joined the response combined brief of the Fund.

circuit court, relying on Wis. Stat. § 802.09(2),[3] held that Fernandez and the Fund had impliedly consented to the trial of § 51.61 issues and that they were not prejudiced as a result of the amendment.

¶ 2. We conclude that the circuit court erroneously exercised its discretion by granting the motion to amend the pleadings to include Hess's new claim. In doing so, we determine that there was no express or implied consent by Fernandez or the Fund to try the issues raised by the Wis. Stat. § 51.61 claim, and that the circuit court did not properly apply the balancing test when it allowed the amendment of the pleadings.

¶ 3. Additionally, we hold that, irrespective of the amendment, the Fund cannot be liable for costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a). The Fund is not a "person," and therefore is incapable of violating any rights of a patient under the statute.

---

[3] Wisconsin Stat. § 802.09(2) states:

Amendments to conform to the evidence. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

## I

¶ 4. Joan Hess began counseling sessions with therapist Carolyn Decker (Decker) in August 1990. Decker employed hypnosis to regress her in order to learn more about her childhood. Her condition deteriorated, however, and she was hospitalized in May 1991. Fernandez was her admitting physician at the hospital. He had participated in her treatment since March 1991, and increased his role during her hospitalization. Fernandez authorized her continued treatment with hypnotherapy, and began personal sessions with her in November 1991. At some point during those treatments, Joan Hess began to recover memories of sexual abuse and other unusual scenarios, such as images of her father and other relatives participating in cult activities, like killing and eating babies, bestiality, and group sex. Eventually, she came to believe that her father had molested her as a child, and subsequently filed a lawsuit against him for sexual abuse.

¶ 5. Joan Hess's condition continued to deteriorate throughout 1992, forcing her to be hospitalized on five separate occasions. In May 1992, Fernandez diagnosed her with multiple personality disorder. In addition, Fernandez agreed that she should undergo a hysterectomy because she suffered anxiety at the sight of blood.

¶ 6. In July 1994, Joan Hess ended her care with Fernandez. Over the next couple of years, she came to realize that her memories, and the diagnosis of multiple personality, were false and caused by Fernandez. In March 1995, Hess filed a claim under Wis. Stat. ch. 655 against Decker[4] and Fernandez, alleging negligence and failure to obtain informed consent before providing

---

[4] Decker settled the claim filed against her and was dismissed from the case with prejudice.

Joan Hess's psychiatric treatment. They named the Fund as a defendant pursuant to Wis. Stat. § 655.27(5)(a)2.

¶ 7. Hess retained an attorney for the malpractice claim, but did not contract with him on an hourly basis. Instead, they agreed to pay him on a contingent fee basis, which would amount to thirty-three and one-third percent (33 ⅓%) of any "lump sum amount" recovered after the commencement of trial. Fernandez and Decker each obtained separate representation. However, nearly 18 months into the lawsuit, Fernandez's counsel assumed additional representation for the Fund.

¶ 8. On September 2, 1999, a jury returned a verdict for Hess on the medical malpractice claims, finding that Fernandez had negligently treated Joan Hess and failed to obtain informed consent for her treatment. The jury awarded plaintiffs $861,538.46 in damages, including $450,000 for Joan Hess. The remainder was awarded to her husband and children for derivative claims.

¶ 9. After the verdict, Hess moved to amend the pleadings to recover costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a).[5] Hess alleged that because Fernandez denied her "prompt and adequate treatment," as guaranteed under § 51.61(1)(f),[6]

---

[5] Wisconsin Stat. § 51.61(7)(a) states, in relevant part:

Any patient whose rights are protected under this section who suffers damage as the result of the unlawful denial or violation of any of these rights may bring an action against the person. . . . The individual may recover any damages as may be proved, together with exemplary damages of not less than $100 for each violation and such costs and reasonable actual attorney fees as may be incurred.

[6] Wisconsin Stat. § 51.61(1)(f) states that each patient shall:

[h]ave a right to receive prompt and adequate treatment, rehabilitation and educational services appropriate for his or her condi-

they qualified to receive payment under § 51.61(7)(a). Although their original pleadings did not include a claim under § 51.61, the circuit court granted the motion,[7] concluding that Fernandez had violated Joan Hess's right to adequate treatment based on the jury's finding of negligence. However, the amount of costs and fees was to be determined at a later date.

¶ 10. After the circuit court granted the post-verdict motion, it awarded Hess $911,409.81 in reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a), reducing the request by the time Hess's attorneys spent on derivative claims and other matters. The court also awarded Hess costs in the amount of $295,567.43, minus statutory costs that had already been paid. The court instructed the parties either to determine the actual amounts based on the decision or to mediate. Ultimately, the court entered a judgment on the § 51.61(7)(a) claim for Hess in the amount of $1,250,576.73, which included the costs and reasonable actual attorney fees in pursuing the post-verdict motion to amend.[8]

---

tion, under programs, services and resources that the county board of supervisors is reasonably able to provide within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.

[7] The motion for costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a) never directly asked the court to amend the pleadings pursuant to Wis. Stat. § 802.09(2). However, the circuit court treated the motion as one for an amendment in its decision to award costs and reasonable actual attorney fees.

[8] On October 7, 2002, Hess filed a motion for an award of interest under Wis. Stat. § 807.01. The circuit court denied their motion on December 12, 2002. On July 29, 2004, Hess filed a cross-appeal of that ruling.

¶ 11. Fernandez and the Fund were unsuccessful in motions for reconsideration. The court of appeals certified the issues to this court. We accepted certification of all issues raised in the certification from the court of appeals, and we now reverse for the reasons set forth herein.

## II

¶ 12. The first issue that we address is whether the circuit court erred in allowing Hess to amend the original pleadings to include a claim for costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a). Such a decision by the circuit court to grant leave to amend a complaint is discretionary. *Finley v. Culligan,* 201 Wis. 2d 611, 626, 548 N.W.2d 854 (Ct. App. 1996). A court misused its discretion if the court failed to exercise its discretion, the facts do not support the court's decision, or the court applied the wrong legal standard. *Id.* On review, we will not upset a discretionary decision unless such discretion was erroneously exercised. *Stanhope v. Brown County,* 90 Wis. 2d 823, 834, 280 N.W.2d 711 (1979). A circuit court has properly exercised its discretion when it has "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698 (citations omitted).

¶ 13. When reviewing the legal standard in this case, we look first to Wis. Stat. § 802.09(2). This subsection, along with § 802.09(1),[9] sets forth the appli-

---

[9] Wisconsin Stat. § 802.09(1) states, in relevant part:

cable standards for the circuit court to apply in deciding if an amendment conforms to the evidence:

> If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Wis. Stat. § 802.09(2). For our review, we interpret each of the parts of the statute as governing separate factual scenarios. *State v. Peterson,* 104 Wis. 2d 616, 629, 312 N.W.2d 784 (1981).

¶ 14. The first part of subsection (2) addresses a scenario where the unpleaded issues are tried by the express or implied consent of the parties. *Zobel v. Fenendael,* 127 Wis. 2d 382, 387, 379 N.W.2d 887 (Ct.

---

Amendments. A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires.

295

App. 1985). We have interpreted this first section of the subsection to be mandatory. *Peterson,* 104 Wis. 2d at 629. If there is a determination that the issue was tried by the express or implied consent of the parties, the court must amend the pleadings to conform with the proof presented at trial. *Id.* To determine implied consent, the court must use the test of actual notice, and if it finds no actual notice, it should find no implied consent to try the unpleaded issue. *Id.* at 634. If, on the other hand, the circuit court finds that there was no consent to the trial of the unpleaded issue, it must apply a balancing test and make an "interests of justice" determination. *Zobel,* 127 Wis. 2d at 390.

¶ 15.　The second part of the statute addresses a scenario where the evidence presented at trial was objected to for failing to be included in the original pleadings. *Id.* at 388. This section of the statute grants the circuit court discretion to allow amendments. *See* Wis. Stat. § 802.09(2). In fact, the statute encourages the circuit court to amend liberally when presentation of the merits of the action is at stake, and if the objecting party fails to show that the amendment would be prejudicial to its continued maintenance of the case. *Id.*

¶ 16.　The second part of Wis. Stat. § 802.09(2) does not appear to apply here.[10] Because there is nothing in the record which demonstrates that Fernandez and the Fund objected to any evidence presented under Wis. Stat. § 51.61(7)(a), it seems clear that this

---

[10] Hess argues that the Fund could not have shown prejudice under either the first or second part of Wis. Stat. § 802.09(2), and that, regardless of which part is selected, the amendment should stand.

case must be resolved under the first part of the subsection, as well as under § 802.09(1).

¶ 17. Hess makes three arguments as to why the circuit court correctly granted its motion for costs and reasonable actual attorney fees. First, Hess argues that the complaint was sufficient as drafted. Because Wisconsin is a notice pleading state, Hess argues that there was no requirement to set forth specifically each claim in the original complaint, but rather that a complaint requires only one cause of action.[11] Second, Hess relies on the circuit court's decision that Fernandez and the Fund had given implied consent, as the elements of the Wis. Stat. § 51.61 claim were "fully aired" during the trial. Finally, Hess argues that Fernandez and the Fund failed in their burden of proving prejudice, as they did not sufficiently identify any hardship resulting from the amended § 51.61(7)(a) claim. Hess also argues that Fernandez and the Fund had opportunities to respond to the motion for costs and reasonable actual attorney fees, and that the failure to make such a response cannot now equate to prejudice.

¶ 18. Fernandez and the Fund, on the other hand, urge us to follow the interpretation of both *Peterson* and *Zobel,* and hold that the circuit court applied the wrong legal standard in allowing the amendment of the complaint. They first argue that the circuit court erred in finding implied consent. Specifically, they argue that because they did not receive actual notice that evidence was being presented on the unpleaded issue, there could not have been implied consent. Next, Fernandez

[11] Although we recognize that Wisconsin does not require heightened specificity in pleadings, we do not accept Hess's argument that a party never needs to plead a claim for attorney fees, which requires the proof of different elements, in a claim for medical malpractice.

and the Fund argue that the circuit court focused on whether they met their burden on prejudice, and neglected to consider, among other matters, why Hess delayed bringing a claim under Wis. Stat. § 51.61(7)(a) for four years. Additionally, Fernandez and the Fund claim that the circuit court was wrong and that they were in fact prejudiced.

¶ 19. In our analysis of Wis. Stat. § 802.09(2), we first address the issue of consent. Here, the record is quite clear that Fernandez and the Fund did not provide Hess with any express consent to try the unpleaded issues contained in Wis. Stat. § 51.61(7)(a). We have identified express consent to be that which "may be given by stipulation, or may be incorporated in a pre-trial order and rarely raises any serious fact question." *Peterson,* 104 Wis. 2d at 630, n. 17 (citation omitted). We, along with the parties, agree that no such consent was given here. Therefore, if Fernandez and the Fund consented to the trial of costs and reasonable actual attorney fees, the consent must be implied. *See Peterson,* 104 Wis. 2d at 630.

¶ 20. As stated above, the determination of whether a case was tried by implied consent is to be made by the circuit court. In this case, the circuit court held that there was implied consent, because the elements of the Wis. Stat. § 51.61(7)(a) claim, at least as to violation of the standard of care, were fully addressed at trial. The court articulated that the elements of a § 51.61(7)(a) claim would require proof that Joan Hess was a "patient" receiving services for mental illness, that her rights under § 51.61 were unlawfully denied or violated, and that she suffered damages as a result of such denial or violation. It concluded, therefore, that Joan Hess's right to adequate treatment was violated,

because the jury found negligence based on Fernandez's failure to exercise reasonable care. Thus, the court was satisfied that the elements, at least as to the violation of the standard of care, were "fully aired" during the trial, and the amendment satisfied Wis. Stat. § 802.09(2).

¶ 21. From our review of the record, we disagree with the circuit court and conclude as a matter of law that there was no implied consent, since Fernandez and the Fund did not have actual notice of the unpleaded issue. For support on this conclusion, we look to *Peterson*. In that case, we held that implied consent exists where there is no objection to the introduction of evidence on the unpleaded issue and where the party not objecting is aware that the evidence goes to the unpleaded issue. *Peterson*, 104 Wis. 2d at 630. Thus, actual notice to the parties is the key factor in determining if there was implied consent. *Id.* Because we assume that relevant evidence was admitted here without timely objection, we must review the record to determine if Fernandez and the Fund had actual notice that the claim by Hess for costs and reasonable actual attorney fees was being raised during trial. *See id.*

¶ 22. We cannot conclude that, because the jury found negligence as to the standard of care, Fernandez and the Fund were fully aware that Hess was also trying a claim under Wis. Stat. § 51.61(1)(f), and that they could be liable for over $1 million in costs and reasonable actual attorney fees under § 51.61(7)(a). The circuit court erred when it failed to analyze the implied consent issue in terms of actual notice. It found that the issue was "fully aired," at least as to the violation of the standard of care, simply because it concluded a commonality of proof between the pleaded and unpleaded claims. The circuit court, despite finding

299

implied consent without considering actual notice, pointed out matters that clearly lead to a determination of no actual notice: "[T]here was no specific prayer for relief under sec. 51.61(7), no discussion of which the court was aware of an award under that section until the filing of plaintiff's motion Number 1, and no request for instruction or inclusion of a specific verdict question as to sec. 51.61(7)." We therefore hold, as a matter of law, that under the circumstances presented here, there was not a valid determination that there was implied consent, since Fernandez and the Fund did not have actual notice. "The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear." 6 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1493 at 32–35 (1990).

¶ 23. Although we conclude that Fernandez and the Fund did not give any consent to trial of the unpleaded issue, our analysis of Wis. Stat. § 802.09 is not complete. In *Peterson,* we decided to utilize a balancing approach in regard to the interests of the party benefiting from, and those of the party objecting to, the amendment, separate from the analysis of implied consent.[12] *Peterson,* 104 Wis. 2d at 632; *see also*

---

[12] In *Peterson,* this court noted that some federal courts had chosen to use a different test, in place of actual notice, to determine if there was implied consent. This alternative test, applied to amendments arising under Fed. R. Civ. P. 15(b), was invoked to determine whether the defendant was prejudiced. Ultimately, we held that the best approach for Wis. Stat. § 802.09(2) would be to treat the concepts of implied consent and prejudice separately. Thus, if the court determines that

*Zobel,* 127 Wis. 2d at 891. Therefore, the circuit court has to determine if such an amendment is in the "interests of justice." Such analysis of the "interests of justice" often involves consideration of prejudice. *Peterson,* 104 Wis. 2d at 635. However, the United States Supreme Court in *Foman v. Davis,* 371 U.S. 178 (1962), held that the balancing test also can take into account a variety of factors including undue delay, motive, and prejudice. *Foman,* 371 U.S. at 182.

■

¶ 24. When determining the "interests of justice," we agree with the court of appeals' decision in *Zobel* that such a review presents a question of law.[13] *Zobel,* 127 Wis. 2d at 391. We therefore review the decision of the circuit court de novo, although benefiting from its analysis. *Meriter Hosp., Inc. v. Dane County,* 2004 WI 145, ¶ 12, 277 Wis. 2d 1, 689 N.W.2d 627.

¶ 25. Here, the circuit court concluded that Fernandez and the Fund did not meet the burden of proof as to prejudice. The court denied the argument that there was prejudice because of the lack of notice of the remedy sought. It reiterated that because the claim was "fully aired" during trial, Fernandez and the Fund could not prove prejudice as to the lack of notice. On appeal, Hess seeks to uphold this ruling.

there was no implied consent, it may sua sponte under § 802.09(1), (2) amend the pleadings to conform to the evidence if it is in the "interests of justice." *State v. Peterson,* 104 Wis. 2d 616, 634, 312 N.W.2d 784 (1981).

[13] The court in *Zobel* correctly acknowledges that the issue can, in other contexts, present a mixed question of law and fact. However, in cases such as this, where our review is limited to the undisputed facts of the record, the only question remaining is decided as a matter of law. *Zobel v. Fenendael,* 127 Wis. 2d 382, 391, 379 N.W.2d 887 (Ct. App. 1985).

¶ 26. Fernandez and the Fund, on the other hand, make multiple arguments in opposition to the circuit court's holding that the pleadings could be amended in the "interests of justice." They argue that the circuit court erred by focusing almost exclusively on prejudice. While prejudice is clearly a factor to be considered in applying this standard, they claim that the court should also look to other factors, such as undue delay and improper motive, and "balance the interests of the party benefiting by the amendment and those of the party objecting to the amendment." *Peterson,* 104 Wis. 2d at 634. They conclude that while no one factor is dispositive in this balancing test, the circuit court erred in failing to apply the "interests of justice" standard properly.

¶ 27. In *Peterson* and *Zobel,* the courts held that the party objecting to the amendment could not claim prejudice if the circuit court offered an opportunity to offer additional evidence. *Id.* at 639; *Zobel,* 127 Wis. 2d at 391 n.8. In regard to the motion for costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a) in this case, Fernandez and the Fund never had the opportunity to present their positions on these matters at trial and have them heard by the jury. The parties apparently had an opportunity to brief the issue, take depositions, and retain experts, but this occurred in a post-verdict motion hearing. Being unable to present its position at trial and, thus, heard by the trier of fact may be prejudicial to the party objecting to the motion.

¶ 28. Furthermore, we are not blind to the unfairness inherent in permitting an amendment at such a late hour. *See DRR, L.L.C. v. Sears, Roebuck & Co.,* 171 F.R.D. 162, 168 (Del. 1997). We agree with Fernandez

and the Fund that in order to determine the "interests of justice," we must consider in the balance several more factors. In *Peterson,* we were able to make our "interests of justice" determination without much difficulty, because the court amended the complaint sua sponte, and did not give the objecting party any time to respond.[14] However, we did not hold that this was the only situation in which a court can find that an amendment is not within the "interests of justice." Thus, when we balance the interests of both parties, as *Peterson* requires, we agree with Fernandez and the Fund that the circuit court should have considered such factors as undue delay and the motive of the moving party, as well as whether prejudice resulted for the Fund and Fernandez.

¶ 29. We find support for this approach from federal cases. Under the Federal Rules of Civil Procedure 15(a),[15] the federal counterpart to Wis. Stat. § 802.09(1), federal courts have leave to amend a plead-

---

[14] Although *Peterson* applied to an amendment made by the court sua sponte, the court of appeals in *Zobel,* 127 Wis. 2d at 390–91 n.7, correctly held that there is no reason why the rationale of *Peterson* could not apply to cases where a party has moved to amend the complaint. *See Wheeler v. Gen. Tire & Rubber Co.,* 142 Wis. 2d 798, 817, 419 N.W.2d 331 (Ct. App. 1987). This is a logical extension, especially because our analysis in *Peterson* was also based on Wis. Stat. § 802.09(2), which governs a motion made by parties, not by the court. *Zobel,* 127 Wis. 2d at 390 n.7.

[15] Rule 15(a) states, in relevant part:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's

ing "when justice so requires."[16] Courts have expanded the interpretation of "interests of justice" beyond prejudice, however, and held that among the adequate reasons for denying leave to amend under such circumstances are "undue delay, bad faith or dilatory motive on the part of the movant. . . ." *Foman,* 371 U.S. at 182; *Viernow v. Euripides Dev. Corp.,* 157 F.3d 785, 799 (10th Cir. 1998) ("we 'have often found untimeliness alone a sufficient reason to deny leave to amend' ") (citation omitted); *DRR, L.L.C.,* 171 F.R.D. at 167 ("a movant who offers no adequate explanation for its delay will ordinarily be denied leave to amend"); *Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d. Cir. 1995) ("It was entirely reasonable for the district court to deny a request to amend a complaint that was filed two and one-half years after the commencement of the action"); *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir. 1992) (" 'the longer the delay, the greater the presumption against granting leave to amend' ") (citations omitted). We see no reason not to extend this rationale to cases requiring "interests of justice" determinations under § 802.09(1). Accordingly, we hold that in situations such

pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

[16] When we formulated the "interests of justice" determination in *Peterson,* we used language from Rule 15(a), as well as Rule 15(b). We held that the circuit court may "under sec. 802.09(1)(2) amend the pleadings to conform to the evidence if the circuit court concludes that justice so requires." *Peterson,* 104 Wis. 2d at 634. This court in *Peterson* denied the amendment because we specifically determined that the objecting party was unfairly deprived of his opportunity to meet the issue and, therefore, prejudiced. As a result, we had no need to consider other factors upon which a court could deny leave to amend in the "interests of justice."

as this, where the amendment was not brought until after the jury verdict, and four years after the original pleadings were filed, the delay is a significant factor in applying the balancing test.

¶ 30.　It is also argued that Hess had a dilatory motive in moving for amendment of the complaint. Hess did not move to amend the claim for costs and actual attorneys fees until after the jurors determined their award. Hess's motion requested $1,052,426.17, which is considerably more than the sum of $149,985, which was the amount that Hess's attorney had agreed to accept based on the contingent fee agreement.

¶ 31.　Although Hess attempts to refute any allegation of improper motive, the argument seems to be of questionable merit. Hess contends that because a post-verdict motion for attorney fees was allowed in *Gorton v. American Cyanamid Co.,* 194 Wis. 2d 203, 232, 533 N.W.2d 746 (1995), that the motion here should not be considered untimely and, thus, improper. In that case, we allowed a post-verdict motion for attorney fees under Wis. Stat. § 100.18. There were allegations that the defendant engaged in false and misleading advertising that resulted in pecuniary loss to the plaintiffs. *Id.* at 232. We held that these allegations were exactly the type of allegations that fall within the purview of § 100.18. *Id.* That case is distinguishable, however, because there was clear evidence of implied consent during trial from the party objecting to the amendment. The reason that this court allowed the post-verdict motion for attorney fees in *Gorton* was because the claim was "fully aired" at trial, the party objecting had actual notice.

¶ 32.　Fernandez and the Fund argue that the plain language of Wis. Stat. § 51.61(7)(a) limits fee recovery to "actual attorney fees . . . incurred." Yet, as

305

noted, Hess now claims fees and costs much greater than those permitted by the contingent fee agreement between Hess and counsel, and thus greater than the reasonable actual attorney fees incurred.

¶ 33. We conclude that the circuit court erroneously exercised its discretion in granting Hess's motion to amend the pleadings under either the theory of implied consent or the balancing test related to the "interests of justice." The circuit court should have considered factors other than just prejudice and should have given much more weight, in applying the balancing test, to the delay in bringing the motion to amend, the motive of the moving party, as well as the prejudice to Fernandez and the Fund, resulting from the hourly fee claim, and the lack of opportunity to present their positions at trial. It appears obvious that Fernandez and the Fund had relied on the fact that there was a contingent fee agreement involved here.

### III

¶ 34. In light of our holding above, there is no need to address the remaining issues certified by the court of appeals, except the question of the Fund's liability in regard to future claims for costs and reasonable actual attorney fees under Wis. Stat. § 51.61(7)(a).

¶ 35. The legislature established the Fund when it enacted Wis. Stat. ch. 655 in 1975, in response to medical malpractice concerns. *Wis. Patients Comp. Fund v. WHCLIP,* 200 Wis. 2d 599, 606–07, 547 N.W.2d 578 (1996). The legislature created a new system for processing medical malpractice claims and created the Fund in order to "finance a portion of the liability incurred by health care providers in medical malpractice actions." *Id.* at 607.

¶ 36. In order to determine if the Fund's financing applies to claims brought under Wis. Stat. ch. 51 for violation of patients rights, we must examine Wis. Stat. § 51.61. Again, we hold that the interpretation of a statute presents a question of law, which we review de novo. *Meriter,* 277 Wis. 2d 9, 10, ¶ 12–13; *see also State v. Williams,* 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). Although we consider this question independent of the decision of the circuit court, we nevertheless benefit from its analysis. *Meriter,* 277 Wis. 2d at 9, 10, ¶ 12–13; *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

¶ 37. Our main objective in statutory interpretation "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. As a result, the court's analysis should begin with the plain language of the statutory text. *Id.,* ¶ 45. If the language of the statute is clear on its face, then we should apply the statute using the common and generally accepted meanings of the terms. *Meriter,* 277 Wis. 2d 10, ¶ 13. Thus, with an unambiguous statute, we need not consult any extrinsic sources. *Id.* (citing *Kalal,* 271 Wis. 2d 633, ¶ 46).

¶ 38. In addressing Wis. Stat. § 51.61, the circuit court held that claims for costs and reasonable actual attorney fees can apply to the Fund. For support, it looked to the court of appeals' decision in *Wright v. Mercy Hospital,* 206 Wis. 2d 449, 557 N.W.2d 846 (Ct. App. 1996). There, a patient brought suit against a nurse, hospital, and the hospital's insurer, after a nurse at the hospital developed a sexual relationship with the patient. The nurse and the insurer settled, but the

court of appeals determined that the patient was entitled to costs and reasonable actual attorney fees from the hospital under § 51.61. The court of appeals allowed an award under a § 51.61 claim, even though the hospital was a corporation. The circuit court here held that the result in the *Wright* case gave tacit support to the statute's applicability to the Fund in this case.

¶ 39. We disagree with the circuit court's interpretation and its application of Wis. Stat. § 51.61 to the Fund. The Fund is clearly not a person "who violates the right in question," as § 51.61 requires. The Fund does not provide any treatment and could never violate any of the rights proscribed in § 51.61. As a result, there is no basis to conclude that it is subject to costs and reasonable actual attorney fees.

¶ 40. In so holding, we must clarify the court of appeals' decision in *Wright,* even though the chief holding in that case can be distinguished. While the hospital implied that no Wis. Stat. § 51.61 claims could apply to it or its insurer because they were corporations, that issue was not addressed by the court because the argument was not developed. *Wright,* 206 Wis. 2d at 449. The court of appeals also did not consider, in *Wright,* the issue of Wis. Stat. ch. 655 exclusivity. The court of appeals should have put much greater emphasis on the relationship between the contingent fee agreement and the claim for costs and reasonable actual attorney fees. When applying the balancing test, such a factor should be carefully considered.

¶ 41. As previously noted, the liability of the Fund does not extend to Wis. Stat. § 51.61(7)(a), since the Fund is not a person under the plain language of that statutory section. Since we have determined that the Fund does not come within the plain language of

§ 51.61(7)(a), we need not determine whether the Fund's arguments concerning "damages" and the exclusivity of Wis. Stat. ch. 655 to the Fund are correct. It is enough for our purposes here that we find that the Fund is not a person within the meaning of § 51.61(7)(a) and, therefore, not subject to the provisions relating to costs and reasonable actual attorney fees.

¶ 42. Because we determine that the motion to amend was erroneously granted and that Fernandez and the Fund are not subject to an award of costs and reasonable actual attorney fees, we need not address the question of interest on such an award.

## IV

¶ 43. In sum, we conclude that the circuit court erroneously exercised its discretion by granting the motion to amend the pleadings to include Hess's new claim. In doing so, we determine that there was no express or implied consent by Fernandez or the Fund to try the issues raised by the Wis. Stat. § 51.61 claim, and that the circuit court did not properly apply the balancing test when it allowed the amendment of the pleadings. Additionally, we hold that, irrespective of the amendment, the Fund cannot be liable for costs and reasonable actual attorney fees under § 51.61(7)(a). The Fund is not a "person," and therefore is incapable of violating any rights of a patient under the statute.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 44. ANN WALSH BRADLEY, J., did not participate.

¶ 45. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I would affirm the judgment of the circuit court.

The plaintiffs' complaint requested an award of costs and fees and such further relief as the court may find proper. The complaint did not set forth a specific prayer for relief under Wis. Stat. § 51.61(7).

¶ 46. I conclude that the circuit court properly exercised its discretion in granting the post-trial motion to amend the pleadings to include a claim for fees and costs. The burden of proof was on the defendants to show prejudice. They have not carried their burden.

¶ 47. We held in *State v. Peterson,* 104 Wis. 2d 616, 634, 312 N.W.2d 784 (1981), that the circuit court has "wide discretion regarding amendment of the pleadings to ensure that the entire controversy is presented and to ensure that the party opposing the amendment is not unfairly deprived of the opportunity to meet the issue created by the amendment."

¶ 48. The majority opinion fails to allow the circuit court any discretion, let alone wide discretion, regarding the post-trial amendment of the pleadings. Furthermore, the majority opinion does not determine prejudice but rather decides the case in "the interests of justice," thus looking far afield for indicia of prejudice. The most important factor in deciding when leave to amend may be denied in both pre- and post-trial motions to amend is whether the opposing party will be prejudiced.[1]

¶ 49. As the *Peterson* court explained, prejudice does not mean that the party suffers a substantive harm but rather means that the party "was deprived of an opportunity to defend against the amended charge."[2] The majority opinion ignores the facts and the circuit

---

[1] 6 Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 1487 at 612–13 (1990).

[2] *Peterson,* 104 Wis. 2d at 635.

court's decision that the defendant had a full opportunity to defend against the amended charge, which had the same elements and proof as the original charge. Instead, the majority opinion stresses that here the defendants did not know they could be liable for over $1 million in costs and reasonable actual attorney fees.[3]

¶ 50. The majority opinion despairs that attorney fees and costs were not presented to the jury.[4] Yet attorney fees are determined only after a successful termination of the underlying claim.[5] And here the parties had the opportunity to brief the issue of fees and costs, take depositions, and retain experts.[6]

¶ 51. The circuit court carefully explored the facts and law applicable to the issue. The circuit court concluded that the standard of care applicable to both the allegations in the complaint and the amended pleadings was fully aired and that the defendants made no offer of proof that additional evidence could have been presented had they been aware of the amended pleadings. Accordingly, the defendants were not prejudiced.

¶ 52. Try as the majority might,[7] the majority opinion cannot distinguish *Gorton v. American Cyanamid Co.* from the present case. *Gorton* was a negligent misrepresentation case tried before a jury. The court permitted the pleadings to be amended post-verdict to add a statutory misrepresentation claim pursuant to Wis. Stat. § 100.18 that permitted recovery of attorneys'

---

[3] Majority op., ¶ 22.

[4] *Id.*, ¶ 27.

[5] *See Gorton v. Am. Cyanamid Co.*, 194 Wis. 2d 203, 230, 533 N.W.2d 746 (1995).

[6] Majority op., ¶ 27.

[7] Majority op., ¶ 31.

fees. The *Gorton* court allowed the amendment because the allegations underlying both claims were fully aired at trial, the defendant was not prejudiced, and no other evidence could have been presented during trial to rebut the amended claim that was already at issue based on the complaint.[8] The *Gorton* court allowed attorneys fees and costs to be determined post-verdict. I view *Gorton* as on all fours with the present case.

¶ 53. For the reasons set forth, I conclude that the circuit court judgment should be affirmed. The circuit court did not erroneously exercise its discretion.

¶ 54. I do not join the majority opinion regarding the Fund's liability for costs and reasonable actual attorney fees because the majority has delivered an unnecessary advisory opinion.

[8] *Gorton,* 194 Wis. 2d at 232–33.